LAKE GARDA COMPANY, INC., ET AL. *v.*
OSWALD E. D'ARCHE ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and CORNELL, Js.

Argued February 1—decided April 26, 1949.

*Carlos A. Richardson* and *Edward B. Scott,* for the appellants (plaintiffs).

*J. Robert Lacey,* for the appellee (named defendant).

*Thomas S. Whitman,* for the appellee (defendant Ruth E. Richard).

BROWN, J.   The individual plaintiffs, as owners of certain lots in the town of Burlington shown on a map of the Lake Garda real estate development recorded in May, 1936, brought this action against the defendants, owners of lots at the corner of Rowe Street and Beach Road, which lots and roadways are shown on the map, for damages and injunctive relief against their interference with the plaintiffs' use of these roadways by obstructions placed therein.   The defendants by their answer denied the material allegations of the complaint and alleged as a special defense that they had acquired title to the area in question from the Lake Garda Improvement Association, successor in ownership to the original developer.   This the plaintiffs denied.   The court rendered judgment for the defendants and the plaintiffs have appealed.

We summarize the court's finding, with the corrections to which the plaintiffs are entitled.   In 1936, Ron-Day, Inc., a land development company, acquired land in Burlington bordering on the west shore of Lake Garda, an artificial lake.   It laid the tract out in building lots and streets for a residential development, as

shown by a map which it caused to be placed on file in the land records. The sale of lots in the development has resulted in the creation of what is primarily a summer residential colony, and the lake is available to lot owners for boating, fishing and swimming. Subsequent to the filing of the map, the company sold two or more adjoining lots somewhat back from the lake front to each of the plaintiffs Butz, DeGroff, Flagg and Jones, to whom we shall hereinafter refer as the plaintiffs. The deeds of these lots refer to them by their numbers as designated on the map on file. Among other streets shown on the map are Beach Road, extending along the west shore of the lake, and Rowe Street, which joins it at right angles from the west. The map portraying these lots, streets and the common beach on the east side of Beach Road as a part of the development was shown to each of the plaintiffs as a prospective buyer of the lots which he purchased, and furthermore the lots and the location of these streets and of the beach were indicated and pointed out to each of them on the land in the course of showing him the premises. Each of them after he had examined the plan of the entire development purchased his lots in reliance upon the recorded map and upon having the use of Rowe Street, Beach Road and the common beach on Beach Road. Each has ever since owned the lots which he purchased and desires these streets kept open for their entire width for present and future use and development. At the time the lots were purchased by the plaintiffs, many of the streets shown on the map had not been fully developed and opened as passable streets. Rowe Street and Beach Road, at the location in controversy, although designated on the map as highways, had not been developed and opened for use as such.

The Lake Garda Improvement Association was

chartered May 10, 1943, by a special act of the legislature. 24 Spec. Laws 181. Under it each of the plaintiffs as owner of land in the tract is a member of the association. In 1942, the defendant D'Arche purchased five lots on the west side of Beach Road just north of its junction with Rowe Street from the then owner, to whom they had been deeded by the company in 1936. Subsequently, D'Arche purchased from the company the two lots next north of these. On May 29, 1943, the company conveyed to the association all of the roads shown upon the map on file, including Rowe Street and Beach Road. After the institution of this action, D'Arche sold a portion of his property to the defendant Richard. On July 12, 1944, the association delivered to D'Arche a purported quitclaim deed of a portion of Rowe Street and Beach Road adjoining his lots, reserving the right of passage on foot only to its members in common with him over the area described.

Upon the property so deeded, D'Arche constructed a fence in Rowe Street along the south line of the tract, parallel to his former south line and extending to within a few feet of the lake, and a fence across Beach Road at a point about opposite his north line, erected a flagpole, and built a wall with concrete steps in Beach Road parallel to and between his east line and the shore of the lake. Before these structures were erected it was possible for vehicles to pass over this portion of Rowe Street and Beach Road, and the plaintiffs and others had driven vehicles over it, although infrequently. The water front on Beach Road north of the D'Arche property and up to Lake View Street is known as a common beach. It has never been developed as a sandy beach although available for that purpose. Access to it is readily available for vehicles from Lake View Street, which is an improved road, but the

most direct way to reach it from the lots of the plaintiffs is by the use of Rowe Street and thence over Beach Road, though this route has never been developed or made readily available for regular vehicular use. The portion of Rowe Street and Beach Road in controversy, by reason of high banks, steep grades and hollows, cannot at present reasonably be advantageously used for other than pedestrian traffic. The walls and fences do not interfere with the only practical use of the property, passage over it on foot, but these obstructions do render it impassable for vehicles.

The principal question is presented by certain conclusions of the trial court, the gist of which is that, as the plaintiffs' lots are "remote" from the location of the obstructions, the prevention of the use of the roadway for vehicular traffic has deprived them of no right of any value or benefit to them. The general principle is well settled that "where an owner of land causes a map to be made of it upon which are delineated separate lots and streets and highways by which access may be had to them, and then sells the lots, referring in his conveyances to the map, the lot owners acquire the right to have the streets and highways thereafter kept open for use in connection with their lands." *Whitton* v. *Clark,* 112 Conn. 28, 32, 151 A. 305. As is further pointed out in the opinion in that case, the precise extent of the owner's obligation to open the streets delineated on the map to the public is dependent on the particular circumstances of the case. See also *Derby* v. *Alling,* 40 Conn. 410, 432. For the reasons stated in the *Whitton* case, the right of the lot owner does not extend of necessity to all the streets delineated on the map so as "to include streets which in any situation reasonably to be anticipated would not prove beneficial to him and from the deprivation

of which he would suffer no injury." In short, the true test of the plaintiff lot owner's right to relief is whether the street so shown is or may be of benefit to him. See *Lucy* v. *Oram,* 114 Conn. 642, 647, 159 A. 655; *Merino* v. *Fish, Inc.,* 112 Conn. 557, 560, 153 A. 301.

A vital conclusion, of those summarized above, is that the opening of the obstructed streets "to vehicular traffic would be of no benefit or value to the plaintiffs whose lots are remote from the location in question." Its significant connotation is that by reason of the remoteness of their lots the opening of these streets to vehicular traffic would be of no benefit to the plaintiffs. Whether the lots are "remote" may be open to question, since the exhibits establish that the property of the plaintiffs Butz and Jones are within approximately 500 feet of the obstructed area, while the development in the vicinity of the location in question extends 1000 feet from east to west and 3200 feet from north to south. It is evident that to permit the blocking of Beach Road, extending as it does along the west shore of the lake, may well adversely affect the value of lots located, as are those of the plaintiffs, in the area to the southwest. In view of this general situation and since the corrected finding is that the most direct way from the lots to the beach is by the use of the obstructed streets, it follows that this conclusion of the court cannot be sustained. Further conclusions designed to support the court's decision that D'Arche's acts have deprived the plaintiffs of no right of any value or benefit to them are that the terrain is such that "this property cannot at present be used for other than pedestrian traffic" even if the obstructions are removed, that to improve the area "for other than pedestrian traffic would be impracticable and unwarranted by the existing general conditions

surrounding this locality," and that passage on foot is "the only reasonable use to which this property is adapted." The fault in these conclusions is that they are restricted in their scope to the present existing situation, in contradistinction to being conclusions inclusive of "any situation reasonably to be anticipated," within the rule laid down in the *Whitton* case. They cannot therefore avail to support the court's decision, which rests upon the fact that at present it is not practicable to use the roadway for vehicular traffic and that its improvement, in view of "existing general conditions," would be impracticable and unwarranted. Under the *Whitton* case the trial court, to warrant its judgment, was bound to go further and hold that this would be true as regards "any situation reasonably to be anticipated." Its failure to do so constitutes reversible error, and a new trial is required to settle this vital issue, which lies outside the conclusions of the court as the record now stands.

Another conclusion on which the trial court based its judgment for the defendants was, in effect, that they owned the property as a result of the quitclaim deed from the association to D'Arche. Even if this deed was not invalid by reason of the association's failure to comply with its charter requirements, as claimed by the plaintiffs, the court's conclusion cannot be sustained. To accord validity to a deed of such purport by the association would be tantamount to the recognition of a power in it to destroy the plaintiff lot owners' easements in roadways of the development, since no facts are found showing any authority conferred upon it by them to convey or release these rights on their behalf. The powers of the association as specified in its charter do not include one to destroy the easements of lot owners in roadways. The deeds to the plaintiffs antedated the formation of the asso-

ciation. This being so, even if the charter bestowed such a power, for the association to exercise it, where the statute imposes membership in it upon the lot owners whether they want to join or not, would be a taking of their property without just compensation, at least in the absence of consent by them; and no consent is found.

The plaintiffs claim that the court erred in excluding evidence offered to show that the obstructions interfered with access to the lake for water necessary for fire protection in that locality. Since the offer went no further than a general question as to fire protection for the community, and the exhibits show apparently available lake water at the foot of streets other than Rowe Street which are considerably closer to all of the lots of the plaintiffs, we cannot say that the court's ruling constituted prejudicial error.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.