GERALD PARK IMPROVEMENT ASSOCIATION, INC. *v.*
PHILIP BINI

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued June 5—decided August 14, 1951

*Jay E. Rubinow,* with whom were *Leon Podrove* and, on the brief, *John D. LaBelle,* for the appellant (plaintiff).

*Irwin I. Krug,* for the appellee (defendant).

O'SULLIVAN, J.   This appeal is concerned only with
that phase of the judgment, rendered on the counter-
claim, which enjoined the plaintiff "against maintaining
any closed gates" across three private roadways.

The finding cannot be corrected.   It incorporates
the following facts:  Prior to 1925, James H. Fitzgerald
decided to develop a tract of land on the south shore
of Lake Wamgumbaug in the town of Coventry.   In
that year he filed with the town clerk a map of the
contemplated development, which he called Gerald
Park.   The map delineated several hundred lots and
various proposed roadways.   Three of these private
ways, Fitzgerald Boulevard, Washburn Avenue and
Ross Avenue, led south from the lake shore to a public
highway known as South Street.   The defendant and
his wife acquired two of the lots during 1946.   Their
deeds, in describing the land conveyed, expressly
referred to the map which Fitzgerald had filed with the
town clerk.   The defendant subsequently built a house
for himself on one of the lots.   The three mentioned
roadways are beneficial to him in connection with his
ownership and use of the lots.

The plaintiff is a nonprofit incorporated association.
Its membership is composed of approximately 50 per
cent of the property owners in the development.   In
1946, Fitzgerald conveyed to the plaintiff the fee in
all of the roadways, subjecting it to a right of way in
every property owner in Gerald Park.   The defendant
does not belong to the association.

For some time prior to 1950, persons not living with-
in the development frequently entered it from South
Street by means of the three roadways.   The attraction
for them was the lake, which was legally available for
bathing solely to the property owners in the develop-

ment. On occasions the trespassers created disturbances, and by their presence and conduct they deprived the residents of the quiet enjoyment of their homes and violated the plaintiff's rights as the owner of the private ways. The annoyance was particularly offensive on Saturdays and Sundays between noon and 7 p. m. The plaintiff tried to cope with the problem by various methods such as the posting of signs and the stationing of officers at the South Street entrances, but the results were not effective.

On July 15, 1950, the plaintiff erected gates at the three entrances. On that occasion, the defendant was denied admission. For the remainder of the summer the gates were kept closed on Saturdays and Sundays from noon until 7 p. m. An employee of the plaintiff was stationed at each entrance during those periods. The gate was opened for a person to pass through only after he had stopped and identified himself as privileged to enter. This procedure was followed with respect to everyone, whether or not he was a member of the association. It proved to be of some help in keeping trespassers out of the development. The plaintiff intends to continue this policy from June through September of each year but only on the days and during the hours previously mentioned. On the basis of the foregoing facts, the court concluded that, in the absence of consent by the defendant, the maintenance of the gates was in derogation of his property rights and constituted an unreasonable interference with his right of way. Judgment was rendered for the defendant on the counterclaim. The plaintiff was enjoined from maintaining any closed gates across the roadways in question.

The case is governed by an approved principle of law. "[W]here an owner of land causes a map to be made of it upon which are delineated separate lots and

streets and highways by which access may be had to them, and then sells the lots, referring in his conveyances to the map, the lot owners acquire the right to have the streets and highways thereafter kept open for use in connection with their lands." *Whitton* v. *Clark*, 112 Conn. 28, 32, 151 A. 305. The sole limitation upon that right is that the street or highway must be of benefit to the lot owner. Id., 33; *Lake Garda Co.* v. *D'Arche*, 135 Conn. 449, 453, 66 A. 2d 120. This presented a question of fact for the court to determine. Since it has found that the three roadways in question were beneficial to the defendant in connection with the use of his property, the principle stated in the *Whitton* case has direct application to him. He has the legal right to have the ways kept open for his use.

The next question is whether the defendant was entitled to the relief which he sought. Injunction is the proper remedy to stop interference with an owner's use and enjoyment of an easement. *Waterbury Trust Co.* v. *G. L. D. Realty Co.*, 121 Conn. 50, 54, 182 A. 466. Injunctions fall within the field of equitable remedies. *Loew's Enterprises, Inc.* v. *International Alliance*, 127 Conn. 415, 418, 17 A. 2d 525. They are not issued as of right, but in the sound discretion of the court. *Van Tassel* v. *Spring Perch Co.*, 113 Conn. 636, 646, 155 A. 832. "A strict legal right, if incompatible with the equities of the case, does not necessarily entitle one to equitable redress." *Roy* v. *Chevrolet Motor Car Co.*, 262 Mich. 663, 668, 247 N. W. 774; *Heppenstall Co.* v. *Berkshire Chemical Co.*, 130 Conn. 485, 488, 35 A. 2d 845. The plaintiff urges that the enforcement of the legal right of the defendant should be denied because of the disparity between the inconvenience which the maintenance of the gates will cause the latter and the injury which the former and its members will suffer from the continued activities of

trespassers. Jones, Easements, § 885; see *Mitchell* v. *Southern New England Telephone Co.*, 90 Conn. 179, 183, 96 A. 966; *Sisters of St. Joseph Corporation* v. *Atlas Sand, Gravel & Stone Co.*, 120 Conn. 168, 175, 180 A. 303.

If we assume that the doctrine of comparative injury may be invoked when the relief sought is restraining rather than mandatory in nature, it does not follow that the injunctive order was improper and, still less so, that the facts require us, as a matter of law, to revoke it. The enjoined party was an incorporated association. Its interest was limited to the ownership of the incumbered fee in the roadways. It could not enhance its standing by relying on inconveniences to which its members would be subjected by the injunction. However disconcerting to them individually, as property owners, might be the activities of trespassers, the disturbances which the latter created would have little, if any, such effect upon the corporate owner of the bare fee in the ways. In any event, the court made no finding that the damage which would result to the plaintiff from the issuing of the injunction would be disproportionate to that which would be sustained by the defendant if the injunction were refused. As the record discloses, the court considered whether, under all the circumstances, the maintenance of the gates constituted an unreasonable interference with the defendant's right of way. We must assume, in the absence of anything in the record to indicate to the contrary, that before entering its order the court properly weighed the equities between the parties to the action. We find no basis for concluding that it abused its discretion in granting the relief requested.

There is no error.

In this opinion the other judges concurred.