HARRY J. PECKHEISER ET AL. *v.* PHILLIP TARONE ET AL.

SPEZIALE, C. J., HEALEY, PARSKEY, ARMENTANO and SHEA, Js.

---

Argued November 12, 1981—decision released January 12, 1982

*Robert H. Rubin,* for the appellants (plaintiffs).

*Melvin L. Bloomenthal,* for the appellees (defendants).

SHEA, J. In this case the plaintiff Eva Peckheiser, who owns two lots abutting a private road, Judy Point Lane in Westport, claims a right of access to the Saugatuck River over land of the defendant Phillip Tarone.[1] The trial court rendered judgment for the defendant, interpreting the language of the several deeds involved to establish no such right and denying the claim of the plaintiff for injunctive relief to provide such access. The plaintiff has appealed, claiming error in the conclusions reached by the trial court.

---

[1] The action was originally brought by Harry J. Peckheiser and Eva Peckheiser as plaintiffs against Phillip Tarone and Margaret Tarone as defendants. At the time of trial conveyances had been made leaving only Eva Peckheiser and Phillip Tarone as owners of the properties involved. For this reason we shall refer to the parties in the singular, although the judgment file indicates that none of the parties was dropped.

Although the brief of each party contains a detailed statement of facts, it does not appear that there are any disputes between them concerning any significant operative facts, most of which are supported by documentary evidence. See Practice Book § 3060G (b). Both the plaintiff and the defendant own lots in a subdivision of land lying between Saugatuck Avenue, a public highway in Westport, and the Saugatuck River. Five lots are shown on the subdivision plan, four of which abut a private street laid out on the plan, Judy Point Lane. This street as shown on the subdivision map extends along the north boundary of those four lots from Saugatuck Avenue in the west to the Saugatuck River in the east. The fifth lot fronts upon Saugatuck Avenue, and a portion of its rear boundary is the Saugatuck River.[2] Proceeding easterly toward the river on Judy Point Lane from Saugatuck Avenue, one would first pass lots two and three on the map, which are owned by the plaintiff, then lot four, which has only twenty feet of frontage on the private road and is owned by one Koizim, and then lot five, which is bounded on the east by the river. Lots two and three are the only lots in the subdivision which do not abut on the Saugatuck River. Judy Point Lane is the only means of access to the public highway, Saugatuck Avenue, for lot three (owned by the plaintiff), lot four (owned by Koizim), and lot five (owned by the defendant). This private way as shown on the plan bellies out into a turnaround on which abuts the northeast corner of lot three, twenty feet of frontage of lot

---

[2] The fifth lot, known as lot number one, is owned by the plaintiff, but it is not mentioned in the complaint and the plaintiff does not seek any right of access over the land of the defendants for the benefit of that lot.

four, and the northwest corner of lot five. A sketch of the subdivision map appears as an appendix to the opinion.

On July 15, 1966, the creator of the subdivision, Charles Blount, Jr., deeded lot five to the defendant's predecessor in title "[t]ogether with a right to use Judy Point Lane for all lawful purposes as though it were a public highway" and also included in the transfer all of his "right, title and interest . . . in and to that portion of Judy Point Lane abutting Lot 5 between the turnaround shown on [the map] and the Saugatuck River." The road is paved from Saugatuck Avenue to the turnaround. As shown on the map, however, it extends along the northerly boundary of lot five, owned by the defendant, to the river. This suit was precipitated by the actions of the defendant in filling and grading the land within the confines of Judy Point Lane as shown on the map and constructing a sea wall where it meets the river bank. The plaintiff claims that those acts interfere with her access to the river from lots two and three.

The conveyance of lot five from the subdivider, Blount, was made subject to "the rights of others in and to Judy Point Lane" and also "rights of others over Judy Point Lane in favor of the owners of Lots 2 and 3, their heirs and assigns." The dispute between the parties centers about the effect of this conveyance and, particularly, the reservation for the benefit of lots two and three, which the plaintiff now owns as a successor in title to the common grantor, Blount.

It is clear that whatever rights the defendant may have to deny the plaintiff access to the river rest upon the deed from Blount and that nothing which

happened thereafter has increased or detracted from those rights. It is not disputed that the defendant acquired by virtue of this deed a right to use in common with others the private road, Judy Point Lane, from where his property, lot five, abuts on the paved turnaround to Saugatuck Avenue for ordinary highway uses. It is also clear that he acquired the fee in the portion of Judy Point Lane extending from the turnaround to the Saugatuck River. The only issue is whether this transfer of the fee in that portion of Judy Point Lane was intended to be subject to the reservation of rights in favor of lots two and three which the plaintiff owns.

The trial court concluded that the reservation language, "subject to . . . rights of others over Judy Point Lane in favor of the owners of Lots 2 and 3, their heirs and assigns," gave the plaintiff as the owner of those lots a right to use only that portion of the road extending from Saugatuck Avenue to the turnaround because only that part was paved. The remainder of the road, which is shown on the map as extending from the turnaround to the river, was found to have been "a marshy area which was submerged at high tide so that a boat could be launched from it."

"It has always been the policy of our law that the land records should be the authentic oracle of title on which a bona fide purchaser or attaching creditor might safely rely." *Safford* v. *McNeil,* 102 Conn. 684, 687, 129 A. 721 (1925). Although a party cannot ignore physical facts which would put him on inquiry concerning the rights of others or be excused from the consequences of actual notice of them, a purchaser may otherwise rely upon the land records to reveal any limitations upon the

interest in property which he acquires. *Hawley* v. *McCabe,* 117 Conn. 558, 564–65, 169 A. 192 (1933). The circumstance that the portion of Judy Point Lane extending from the turnaround to the river was unpaved, marshy and submerged at high tide is not sufficient in our judgment to charge the plaintiff with notice of any infirmity in her rights as disclosed by the land records. The purpose of the extension of the road to the river as shown on the map was obviously to provide access thereto by lot owners in the development, particularly for the benefit of the owners of lots two and three who had no other means of reaching the river. Since this extension was marshy and subject to flooding by the tide, the absence of paving or other demarcation would be quite normal.

The question is narrowed to an interpretation of the language of the reservation in the deed from Blount transferring the fee in the portion of the road abutting the defendant's lot. The only purpose of subjecting this conveyance to "the rights of others over Judy Point Lane," with special mention of lots two and three, must have been to detract from the rights otherwise granted. The defendant's position is that this clause was intended only to affect the grant of the easement over the paved portion of Judy Point Lane from the turnaround to Saugatuck Avenue, which was necessary for access to his property—to make it clear that his right to use that portion of the private road was not exclusive. Such a view would make this language wholly redundant, since each grantee of a conveyance of a lot in the subdivision would have acquired a right to use in common with all other lot owners any private road shown in the development plan of benefit to him even without any express grant of

such a right. *Gerald Park Improvement Assn.* v. *Bini,* 138 Conn. 232, 235–36, 83 A.2d 195 (1951) ; *Lake Garda Co.* v. *D'Arche,* 135 Conn. 449, 453, 66 A.2d 120 (1949). Also, the right to use Judy Point Lane "as though it were a public highway," even if redundant, could hardly be deemed to create an exclusive right to use this private road. It is a well established principle of construction that wherever possible each part of the scrivener's phraseology should be given some import. *Weil* v. *Beresth,* 154 Conn. 12, 19, 220 A.2d 456 (1966) ; *A. M. Larson Co.* v. *Lawlor Ins. Agency, Inc.,* 153 Conn. 618, 621–22, 220 A.2d 32 (1966) ; *Eastern Bridge & Structural Co.* v. *Curtis Building Co.,* 89 Conn. 571, 575–76, 94 A. 921 (1915). The construction we adopt, that the language of the reservation was intended to subject the conveyance of the fee in the extended portion of Judy Point Lane to the rights of others, particularly for the benefit of lots two and three owned by the plaintiff, is consistent with this rule of construction. It is also compatible with the plain language of the reservation which, in referring to the "rights of others over Judy Point Lane," must be taken to include the whole of that street as shown on the subdivision map. This interpretation is reinforced by the circumstance that when the grantor chose to refer to only a specific portion of the road, as he did in describing the area which was transferred to the defendant in fee, he was able to describe it with particularity. We may presume that in the absence of any such qualification the words "Judy Point Lane" were intended to encompass the entire street so designated on the map referred to in the deed. See *Rhinehart* v. *Leitch,* 107 Conn. 400, 404, 140 A. 763 (1928) ; *Rockwell* v. *New Departure Mfg. Co.,* 102 Conn. 255, 304, 128 A. 302 (1925).

The conveyance of the fee to a portion of the road was not inconsistent with the reservation of a right to use the road. When Blount, the common grantor, later conveyed lots two and four he included a transfer of the fee in the remainder of Judy Point Lane from the turnaround to Saugatuck Avenue. It is not claimed that the transfer of the fee affected the rights which the defendant and other lot owners had to use this paved portion of Judy Point Lane.

The defendant concedes that the plaintiff had acquired whatever rights Blount reserved for the benefit of lots two and three, with respect to the use of Judy Point Lane. Apart from the express language of her deeds to those lots, the conveyances of the lots with reference to the subdivision map showing Judy Point Lane would carry with them a right to use the entire length of that road in common with others; *Gerald Park Improvement Assn.* v. *Bini,* supra; unless the grantor by his prior conveyance to the defendant had relinquished that right. We conclude that he did not and that the plaintiff, therefore, does have a right of access over the disputed portion of Judy Point Lane to the Saugatuck River.

The defendant claims that, even if the plaintiff is entitled to have access to the river over the disputed portion of Judy Point Lane, she has suffered no harm from his actions sufficient to warrant the issuance of an injunction and also is guilty of laches. The plaintiff did present evidence that her inability to launch her boat from the road as extended to the Saugatuck River necessitated her use of the municipal launching facilities three miles distant. "Injunction is the proper remedy to stop interference with an owner's use and enjoyment of an ease-

ment." *Gerald Park Improvement Assn.* v. *Bini,* supra, 236. It is an equitable form of relief, however, which does not follow automatically upon establishment of a strict legal right where such a remedy would not be compatible with the equities of the case. Id. The defense of laches does not appear to have been pleaded or otherwise raised in the trial court. See Practice Book §§ 164, 3063; *Pawlinski* v. *Allstate Ins. Co.,* 165 Conn. 1, 6–7, 327 A.2d 583 (1973). The memorandum of decision does not mention either of those issues and contains no findings of fact relating to them. Accordingly, we are unable to review those additional claims of the defendant.

There is error, the judgment of the trial court is vacated and the case is remanded to the trial court for further proceedings[3] consistent with this opinion.

In this opinion the other judges concurred.

*(See Appendix on next page.)*

---

[3] The further proceedings would relate not only to the claim of the plaintiff for an injunction, but also to the claim for damages.

## APPENDIX

N →

Subdivision of
**JUDY  POINT**
prepared for
**CHARLES  BLOUNT,  JR.**
Westport, Conn.
April, 1963