ELLA L. STANKIEWICZ ET AL. *v.*
MIAMI BEACH ASSOCIATION, INC.
(10987)

PETERS, HEALEY, SHEA, GRILLO and CIOFFI, Js.

Argued April 5—decision released August 16, 1983

*Richard C. Jacobson,* for the appellant (defendant).

*Lawrence H. Lissitzyn,* for the appellees (plaintiffs).

CIOFFI, J. The defendant, Miami Beach Association, Inc. (association), is a summer resort community located on the seashore in Old Lyme. The permanent residence of the plaintiffs, Ella L. Stankiewicz and Ronald M. Stankiewicz, is a house upon a lot which fronts on Liberty Street and is bounded on the east by Columbus Avenue and on the west by Washington Avenue. The plaintiffs' existing driveway exits onto Liberty Street. The defendant association owns the fee in Liberty Street and in those sections of Columbus and Washington Avenues north of Liberty Street. The portions of Columbus and Washington Avenues south of Liberty Street and which abut the plaintiffs' property are public highways.

On July 2, 1980, the defendant association installed, closed and locked two gates across the southerly side of the intersections of Liberty Street and Washington and Columbus Avenues.[1] Although the gates are situ-

---

[1] The association is a specially chartered corporation incorporated in 1949 by Special Act 407 of the state legislature. 25 Spec. Acts 1130, No. 407. Section 8 of its charter authorizes it to regulate travel over the highways within association limits when the board of governors (board) determines

ated on property owned by the defendant association, given the present location of the plaintiffs' driveway, they cut off the plaintiffs' access to the public portions of Columbus and Washington Avenues via Liberty Street.[2] The plaintiffs sought an injunction to prevent the defendant from closing the gates. The court, after a hearing on the plaintiffs' request for a permanent injunction, granted the injunction permanently enjoining the association from closing the gates. From this judgment, the defendant association has appealed.

Additional material and relevant facts which are not in dispute are as follows: Nunzio Corsino was the common grantor of the plaintiffs' predecessors in title and of the defendant association. Corsino conveyed, inter alia, Liberty Street and Columbus and Washington Avenues north of Liberty Street to the defendant association on August 16, 1958.[3] Approximately nine years later, on September 18, 1967, Corsino's estate conveyed the lot presently owned by the plaintiffs to the plaintiffs' predecessors in title, Joseph H. and Arlene Del Biondo.

---

that the free and unrestricted use of the highways is dangerous or inconvenient. Prior to construction of gates at the intersections, members of the association purportedly complained to the board about speeding vehicles. Many of these vehicles allegedly proceeded up Washington and Columbus Avenues over Liberty Street enroute to the Hawks Nest beach area which lies beyond the association limits. In response to this situation, which the association asserts was a dangerous condition, the board erected gates on or after July 1, 1980, to prevent vehicular transit through the intersections.

[2] See appendix where the plaintiffs' lot is indicated by a darkened rectangle and the gates are marked by brackets.

[3] The stipulation of facts entered into by the parties does not indicate whether this deed was recorded. Since, however, the parties have not raised the issue of notice, for purposes of this opinion, we assume that the deed was duly recorded.

Before either of the above-mentioned conveyances, Corsino filed a plot map with the Old Lyme town clerk. The map delineated, inter alia, Liberty Street, both the public and private portions of Washington and Columbus Avenues and the plaintiffs' lot. Each of the conveyances incorporated by reference either the original map or a revised edition thereof.[4] Neither map shows any gate obstruction.

The plaintiffs acquired their lot from their predecessors in title, the Del Biondos, on May 31, 1975. Their deed incorporated by reference the identical map specified in the Corsino estate-Del Biondo transfer. And, as previously noted, this map delineated Liberty Street as unobstructed. It is by virtue of this deed which incorporated the map that the plaintiffs claim an implied private right of easement to Liberty Street. Accordingly, the plaintiffs assert that their deed gave them the right to unobstructed travel between Liberty Street and the public portions of Washington and Columbus Avenues.[5] They make their assertion even though the common grantor of the plaintiffs' predecessors in title and the defendant association conveyed the roadways to the association prior to the lot conveyance to the plaintiffs' predecessors in title.

---

[4] Relative to this action, the revised edition is identical in all material respects to the original map.

[5] It should be made clear that it is the unobstructed travel between Liberty Street and the public portions of Columbus and Washington Avenues, not the plaintiffs' ability to utilize Liberty Street, that is at issue here. For in fact the association has not and states in its brief that it will not deny the plaintiffs the use of Liberty Street other than to pass through the intersections leading to the public portions of Columbus and Washington Avenues.

Additionally, it should be noted that no claim has been made in this case for an easement by necessity. Although the plaintiffs are inconvenienced by the present location of their driveway, they evidently have access from their lot to the public parts of Columbus and Washington Avenues from the east and west sides of their lot. The plaintiffs presented no evidence that they could not utilize these avenues by relocating their driveway.

The singular and dispositive issue presented in this appeal is whether a grantee of a lot whose deed incorporates a plot map with roadways delineated thereon can by law receive an implied easement over the roadways even though the grantor has conveyed the roadways in fee to another party prior to the lot conveyance.[6]

We have held on prior occasions that when reference to a map is made in the deed which conveys a lot and that map delineates roadways, even though there is no express easement granted, in certain circumstances " 'the lot owners acquire the right to have the streets and highways thereafter kept open for use in connection with their lands.' *Whitton* v. *Clark,* 112 Conn. 28, 32, 151 A. 305 [1930]." *Gerald Park Improvement Assn.* v. *Bini,* 138 Conn. 232, 236, 83 A.2d 195 (1951). This is so even if at the time of the lot transfer the delineated roadways are not developed. *Lake Garda Co.* v. *D'Arche,* 135 Conn. 449, 66 A.2d 120 (1949).[7] The nature of the right obtained by the lot owner is that of an implied easement. See *Lake Garda Co.* v. *D'Arche,* supra, 455; *Rischall* v. *Bauchmann,* 132 Conn. 637, 644, 46 A.2d 898 (1946). A close reading of the entire records and briefs in those cases where we held that lot owners had such implied easements reveals, however, that the grantors at the time of the lot transfers owned both

---

[6] The issue presented in this case is confined to a claim of an implied easement to roadways based upon a descriptive reference in a deed to a map. It is to be distinguished from a situation wherein a conveyor, by deed, transfers a portion of his land and the conveyor's prior use of the land conveyed can give rise to an implied easement in the land conveyed in favor of the land retained. In this latter situation the issue is usually a question of fact resting upon a number of considerations. See 3 Powell, Real Property § 411.

[7] There is a limitation to this right which is that the street or highway must be of benefit to the lot owner. *Gerald Park Improvement Assn.* v. *Bini,* 138 Conn. 232, 236, 83 A.2d 195 (1951).

the streets and the lots; *Gerald Park Improvement Assn.* v. *Bini,* supra; *Lake Garda Co.* v. *D'Arche,* supra; *Whitton* v. *Clark,* 112 Conn. 28, 151 A. 305 (1930); or that the grantors reserved a right for others to use the streets conveyed. *Peckheiser* v. *Tarone,* 186 Conn. 53, 438 A.2d 1192 (1982). Such is not the case here. In the present case, the common grantor, Corsino, had conveyed away all his interest in Liberty Street to the defendant association prior to transferring the lot to the plaintiffs' predecessor in title.

It is fundamental that a grantor cannot effectively convey a greater title than he possesses. *Short Beach Cottage Owners Improvement Assn.* v. *Stratford,* 154 Conn. 194, 199, 224 A.2d 532 (1966); *Martin* v. *Sterling,* 1 Root 210, 211 (1790). As to easements, "[n]o right of way appurtenant can be created without a dominant as well as a servient estate. . . . The dominant estate enjoys the benefit of the way, and the servient estate bears the burden. The way can become legally attached to the dominant estate only if the same person has unity of title to both the way and the dominant estate." (Citations omitted.) *Curtin* v. *Franchetti,* 156 Conn. 387, 389, 242 A.2d 725 (1968). We hold that this fundamental principle of law applies to the present case as well as to express easements. Since the common grantor, Corsino, did not own the streets, i.e., the servient estate, when he conveyed the lot or dominant estate to the plaintiffs' predecessors in title, there could be no implied easement by law over the streets outlined on the map incorporated in their deed. When a conveyance describes the conveyed property by reference to a map on which streets are shown, an implied easement over the streets exists by law, if it exists at all, only if the conveyor in fact owns the streets. See 3 Powell, Real Property § 409.

The plaintiffs assert that the mere filing of the map created a permanent implied easement over the roadways in favor of potential purchasers of the delineated lots and that this easement was created upon the filing of the map. Accordingly, the plaintiffs argue that even though Liberty Street was conveyed to the association prior to the lot conveyance to the plaintiffs' predecessors in title, since the potential lot owners already had an easement over the roadways, the conveyance to the defendant association was encumbered by the claimed easement. This argument is unpersuasive. Indeed, the plaintiffs cite no authority for this proposition, nor can this court find any such authority.

" 'It has always been the policy of our law that the land records should be the authentic oracle of title on which a bona fide purchaser . . . might safely rely.' *Safford* v. *McNeil,* 102 Conn. 684, 687, 129 A. 721 (1925)." *Peckheiser* v. *Tarone,* 186 Conn. 53, 57, 438 A.2d 1192 (1982). A grantee who takes under a deed referring to a map thus cannot justifiably look *only* to the map, but must consider it in conjunction with other deeds and documents comprising the chain of title. Indeed, reference to a map in a conveyance normally is utilized merely as a descriptive tool to identify the property and, therefore, does not itself convey. See 23 Am. Jur. 2d, Deeds § 232.

Accordingly, we hold the following:

(1) The mere filing of a plot map which delineates roadways and lots thereon does not diminish the interest of the fee owner in and to the roadways portrayed on the map; and

(2) An implied easement in such roadways may exist only, if it exists at all, when the grantor owns the fee to the roadways and makes reference in the grantee's deed to a map which depicts the roadways.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.

## Appendix