[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Il Giardino, LLC ("plaintiff'), a limited liability company which owns real property located at 12 Fieldpoint Circle, in Greenwich, Connecticut, brought this action CT Page 7249 seeking a permanent injunction against the defendants, the Belle Haven Land Company ("BHILC"), David F. Ogilvy ("Ogilvy") and Thomas P. Clephane ("Clephane").[1]
The plaintiff alleges, and the defendants do not contest, that it has a twenty foot easement running from its parcel ("Il Giardino Parcel"), over the Ogilvy and Clephane parcels ("Ogilvy Parcel" and "Clephane Parcel" respectively), to Glenwood Drive. a private road in Belle Haven. The plaintiff further alleges that it has an express and/or implied right-of-way, and grant-of-use to the ways and avenues of the BHLC, including Glenwood Drive.
The plaintiff alleges that the defendants and/or their successors and assigns "willfully denied the Plaintiff use and enjoyment of the aforementioned express and/or implied Right-of-Way and Grant-of-Use to the ways and avenues of BHLC." The plaintiff alleges that the defendants erected "a barrier across the egress to said Right-of-Way at the intersection between the same, Glenwood Drive, and the OGILVY and CLEPHANE PARCELS."
The plaintiff alleges that by erecting the barriers, the defendants have deprived the plaintiff of "the quiet enjoyment and use of the aforementioned express and/or implied Right-of-Way and Grant-of-Use to the ways and avenues of the. . . . [and have] created a dangerous condition on the IL GIARDINO PARCEL in that emergency vehicles and personnel do not have a reasonable and expedient access . . . in the event of . . . [an] emergency." The plaintiff further alleges that in erecting the barrier across the egress, the defendants were malicious and intended to annoy or injure the plaintiff in violation of General Statutes §52-570.
The plaintiff seeks a declaratory judgment "quieting title in and to the Right-of-Way and Grant-of-Use in favor of the Plaintiff across the OGILVY and CLEPHANE PARCELS and declaring that the Plaintiff enjoys the right to use the appurtenant roads of the [BHLC]." The plaintiff further seeks an order "restraining and/or enjoining . . . the Defendants . . . from erecting or maintaining a barrier blocking the Plaintiffs Right-of-Way over and across the OGILVY and CLEPHANE PARCELS and the Grant-of-Use over and across the appurtenant roads of the [BHLC]."
 CHAIN OF TITLE
CT Page 7250
The court first must examine the chains of title for the Ogilvy Parcel and IL Giardino Parcel. On August 26, 1897, the BHLC, by deed, conveyed various parcels of land to Robert M. Bruce and Nathaniel Witherell, as trustees. They were to sell the parcels for a reasonable value and distribute the proceeds among the shareholders of the BHLC. (Exhibit 1: Deed in Book 77, p. 240). The parcel which is the subject of this action is described in the deed as the third parcel: "The third of said parcels of land with the bathing house thereon, is bounded northerly by land now or formerly of the Belle Haven Land Company, easterly by land of Oliver D. Mead, southerly by the waters of the Long Island Sound and westerly by Glenwood Drive, so called" (Exhibit 1: Deed in Book 77, p. 241).
The deed also dictates that the parcels were conveyed by the BHLC "together with the right to use in common with others to whom such right has been or may be hereafter granted by said Company, the ways and avenues of said company as the same may be necessary and convenient in passing to and from said premises hereby conveyed." (Exhibit 1: Deed in Book 77, p. 242). Furthermore, the deed states, "to have and to hold the above granted and bargained premises with the privileges and appurtenances thereof unto them the said grantees, their successors and assigns, forever, to their own use and behoof. . . . And the several covenants, agreements and provisions herein contained shall run with the land hereby conveyed and be binding upon said grantee, their successors and assigns forever." (Exhibit 1: Deed in Book 77, pp. 242-44).
On May 18, 1901, Robert M. Bruce and Nathaniel Witherell conveyed what is known as the Ogilvy Parcel to John Leahy. (Exhibit 2: Deed in Book 84, p. 460). On the same day, John Leahy conveyed that same parcel back to Nathaniel Witherell. (Exhibit 2a: Deed in Book 84, p. 461).
On November 5, 1901, Nathaniel Witherell granted a twenty foot easement to the Field Point Land Company ("FPLC"). (Exhibit 3: Deed in Book 89, p. 376). Witherell conveyed to the FPLC "a right of way for all purposes of travel twenty feet wide from Lots 7 8 on a certain map entitled `Map of Field Point, Greenwich, Conn.'. . . . across land conveyed to me by John F. Leahy . . . to the Belle Haven Road, known as Glenwood Drive. Said right of way is over a strip of land twenty feet wide throughout its entire length bounded northerly by Lot No. 94 . . . easterly by said Lots 7 8, southerly by other land of the grantor, and CT Page 7251 westerly by Glenwood Drive." (Exhibit 3: Deed in Book 89, p. 376). The deed further stated: "TO HAVE AND TO HOLD the above granted right of way with the privileges and appurtenances thereof unto the said grantee, its successors and assigns, forever, to its and their own proper use and behoof." (Exhibit 3: Deed in Book 89, p. 377).
On December 3, 1901, the FPLC conveyed the piece of land, now known as the Il Giardino Parcel, to Frank L. Froment. (Exhibit 4: Deed in Book 89, p. 399). This parcel was conveyed "[t]ogether with the right to use for all purposes of travel, in common with others to whom such right has been or may hereafter be granted by said Company, a way twenty (20) feet wide from said lot No. 7 across land conveyed to Nathaniel Witherell by John F. Leahy by deed dated May 18, 1901, to the Belle Haven Road known as Glenwood Drive. . . . [and t]ogether with the right to use in common with others to whom such right has been or maybe hereafter granted by said Company, the ways and avenues of said Company as the same may be necessary and convenient in passing to and from said premises hereby conveyed. . . . TO HAVE AND TO HOLD the above granted premises with the privileges and appurtenances thereof, unto him, the said grantee, his heirs and assigns forever to his and their own proper use and behoof." (Exhibit 4: Deed in Book 89, pp. 399-400). Frank L. Froment is the predecessor in title to the plaintiff, Il Giardino.
Throughout the years, the II Giardino Parcel was conveyed to various people, and ultimately to the Il Giardino corporation in 1995. (Exhibits 4 through 18). Each time the parcel was conveyed, it was conveyed with the use of the twenty foot wide easement. When the parcel was ultimately conveyed to II Giardino, it was conveyed, inter alia, "together with such rights as the grantor may have to use a right of way 20 feet wide from said premises to Glenwood Drive, which said right of way is described in grant dated November 5, 1901 and recorded in said land records in Book 89 at Page 376." (Exhibit 18: Deed in Book 2714, p. 215).
 DISCUSSION
The ultimate issue before this court is whether the plaintiff has the right to travel over the roads and avenues of Belle Haven. The defendants argue that the plaintiff does not have such a right because the plaintiffs predecessor in title did not have such a right and could not convey such a right to the plaintiff. CT Page 7252
The plaintiff first argues that Nathaniel Witherell ("Witherell") had the right to travel over the roads of Belle Haven and transferred those rights to the Field Point Land Company ("FPLC"). The deed in Book 77 of the town land records, at page 240, indicates that Witherell obtained the right to travel over the roads of Belle Haven from the Belle Haven Land Company ("BHLC"). By deed, the BHLC conveyed to Witherell, interalia, "the right to use in common with others to whom such right has been or [may be] hereafter granted by said Company, the waysand avenues of said [C]ompany as the same may be necessary and convenient in passing to and from said premises hereby conveyed." (Emphasis added.) (Exhibit 1: Deed in Book 77, p. 242). The deed concludes by indicating that "the several covenants, agreements and provisions herein contained shall run with the land herebyconveyed and be binding upon said grantee, their successors andassigns forever." (Emphasis added.) (Exhibit 1: Deed in Book 77, pp. 243-44).
"It is axiomatic that the meaning and intent of language in both a contract and a deed are determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in light of the surrounding circumstances. . . . Furthermore, in giving meaning to the language of a contract, we presume that the parties did not intend to create an absurd result." (Citations omitted; internal quotation marks omitted.) South End PlazaAssociation, Inc. v. Cote, 52 Conn. App. 367, 377, __ A.2d __ (1999).
"The principles governing the construction of instruments of conveyance are well established. In construing a deed, a court must consider the language and terms of the instrument as a whole . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed . . . and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence." (Alterations in original; internal quotation marks omitted.)Cohen v. City of Hartford, 244 Conn. 206, 214, 710 A.2d 746
(1998).
It is clear from the ordinary language of the deed in Book 77 CT Page 7253 in the town land records, at page 240, that the BHLC conveyed to Nathaniel Witherell and Robert Bruce, as trustees, the right to travel over the "ways and avenues" of Belle Haven. Furthermore, the right to travel over the roads of Belle Haven "shall run with the land." The plain language of the deed dictates that "the several covenants, agreements and provisions herein containedshall run with the land hereby conveyed and be binding upon saidgrantee, their successors and assigns forever." (Emphasis added.) (Exhibit 1: Deed in Book 77, pp. 243-44).
"It is well settled that where a restrictive covenant contains words of succession, i.e., `heirs and assigns,' a presumption is created that the parties intended the restrictive covenant to run with the land." Weeks v. Kramer,45 Conn. App. 319, 323, 696 A.2d 361, cert. granted, 243 Conn. 917,710 A.2d 339 (1997), appeal dismissed, 244 Conn. 203, 707 A.2d 30 (1998); see also Kelly v. Ivler, 187 Conn. 31, 39-40. 450 A.2d 817
(1982). Here, it is evident, by the plain language of the deed, that the parties intended for the various agreements and rights contained therein to "run with the land." The rights contained therein were not personal in nature. The plain language of the deed indicates that the "right to use . . . the ways and avenues [of Belle Haven] . . . shall run with the land . . . forever." (Exhibit 1: Deed in Book 77, pp. 240-44). As such, Witherell had the right to use the roads and avenues of Belle Haven and was entitled to transfer that right to subsequent grantees.
Furthermore, the deed referenced a "Map of Belle Haven" which was filed in the town office. "[T]he law is well settled that where an owner of land causes a map to be made of it upon which are delineated separate lots and streets and highways by which access may be had to them, and then sell the lots, referring in his conveyances to the map, the lot owners acquire the right to have the streets and highways thereafter kept open for use in connection with their lands." Whitton v. Clark, 112 Conn. 28, 32,151 A. 305 (1930). In the original conveyance from the BHLC to Witherell and Robert Bruce, as trustees, the deed makes reference to a map, entitled "`Map of Belle Haven, in the town of Greenwich, Fairfield County, Connecticut,'. . . on file in the office of the Clerk of said Town of Greenwich." (Exhibit 1: Deed in Book 77, p. 240). Therefore, Belle Haven conveyed the right to use the streets and roads which were illustrated on the map.
The defendants argue that Whitton v. Clark, supra, CT Page 7254112 Conn. 28, does not apply because the. roads and avenues of Belle Haven are not public roads, but private ones. The defendants argue that Witherell could not have conveyed the rights to the roads of Belle Haven because he did not own those roads or the rights to use them. The defendants argue that the case of Stankiewicz v.Miami Beach Association, Inc., 191 Conn. 165, 464 A.2d 26 (1983), is more directly on point. The Supreme Court, in Stankiewicz, held that even though land conveyed in a deed makes reference to a map on which streets are shown, an easement by implication only exists in the grantee if the streets are public or the grantor owns the streets. Id.
"It is fundamental that a grantor cannot effectively convey a greater title than he possesses." Id., 170. The defendants argue that because Glenwood Drive and the other roads and avenues of Belle Haven are private, the fact that the deeds in question make reference to the map on which the roads are shown is irrelevant. However, this argument is unpersuasive.
Stankiewicz is not on all fours with the present case. First, in Stankiewicz, the plaintiffs sought an injunction against the defendant because the defendant obstructed their right to travel off of the private road of Liberty Street onto the public portions of Columbus Avenue and Washington Avenue. Here, the plaintiff can travel over the public roads, but is prohibited from entering Glenwood Drive, a private road in Belle Haven.
Second, the Supreme Court in Stankiewicz held that the lower court erred by granting a permanent injunction enjoining the defendant from obstructing the public portions of the roads. The Supreme Court held that "a grantor cannot effectively convey a greater title than he possesses." Id. The plaintiffs, in that case, had the right to travel over the private road of Liberty Street. However, that was the only right which the plaintiffs had with regard to the private road.
In this case, Nathaniel Witherell had the right to travel over the private roads of Belle Haven, and that was all that was conveyed to the plaintiffs predecessor in title. Therefore, Witherell did not convey a greater title than he possessed. Furthermore, the original conveyance from Belle Haven to Witherell indicated that such a right to travel over the roads of Belle Haven was intended to continue beyond the life of Witherell. The original deed, granting the right to travel over the private roads of Belle Haven, dictates that "the several CT Page 7255 covenants, agreements and provisions herein contained si all run with the land hereby conveyed and be binding upon said grantee, their successor and assigns forever." (Exhibit 1: Deed in Book 77, pp. 243-44).
Since Nathaniel Witherell did not grant a greater title than he possessed and the deeds made reference to a map which illustrates Glenwood Drive and other Belle Haven roads, he had a right to transfer his interest in the roads and avenues of Belle Haven. Therefore, the plaintiff lawfully obtained the right to use the roads and avenues of Belle Haven.
By deed recorded in Book 89 of the town land records, Witherell granted an easement to the Field Point Land Company ("FPLC"). This easement is described as "a right of way for all purposes OF TRAVEL twenty feet wide from Lots 7 8 on a certain map entitled `Map of Field Point, Greenwich, Conn.'. . . across land conveyed to [Witherell] . . . to the Belle Haven Road, known as Glenwood Drive. . . . Said right of way is to be used by said Field Point Land Company and by all persons, their heirs and assigns, to whom said The Field Point Land Company shall convey any part of the real estate now owned by said Company, together with the right to use said above described right of way. TO HAVE AND TO HOLD the above granted and bargained right of way with the privileges and appurtenances thereof unto the said grantee, its successors and assigns, forever, to its and their own proper use and behoof." (Exhibit 3: Deed in Book 89, pp. 376-77).
"For a determination of the character of an easement created by deed we must look to the language of the deed, the situation of the property and the surrounding circumstances in order to ascertain the intention of the. . . . The language of the grant will be given the ordinary import in the absence of anything in the situation or surrounding circumstances which indicates a contrary intent. . . . The meaning and effect of the reservation are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances. . . ." (Citations omitted; internal quotation marks omitted.) Lago v. Guerrette, 219 Conn. 262,267-68, 592 A.2d 939 (1991); see also Lakeview Associates v.Woodlake Master Condominium Association, 239 Conn. 769, 777,687 A.2d 1270 (1997).
"Moreover, the words [in the deed] are to be given their CT Page 7256 ordinary popular meaning, unless their context, or the circumstances, show that a special meaning was intended." (Brackets in original; internal quotation marks omitted.) Cohenv. City of Hartford, supra, 244 Conn. 215. Here, the easement was granted to the FPLC, the plaintiffs predecessor in title, "forall purposes of travel." "Travel" is defined generally as "to go from one place to another, as by car, train, plane, or ship;. take a trip, journey; . . . to move or go from one place or point to another;. . . ." The Random House Dictionary of the English Language (2d Ed. 1987).
Nothing in the deed, which grants the twenty foot easement, indicates that the words contained therein should not be given their ordinary popular meaning. As such, it seems illogical to assume that "a right of way for all purposes of travel" only conveys to the grantee a right to "travel" back and forth over the twenty foot easement. "[F]or all purposes of travel" indicates that the grantor intended that the grantee would use the easement to "move from one place or point to another" or "to take a trip, journey." Furthermore, there are no restrictions in the deed on the use of the easement.
Even assuming, arguendo, that the roads of Belle Haven did not pass expressly with the easement conveyed in the deed, the plaintiff argues, and this court agrees, that the use of the roads and avenues of Belle Haven passed by implication. "An implied easement is typically found when land in one ownership is divided into separately owned parts by a conveyance, and at the time of the conveyance a permanent servitude exists as to one part of the property in favor of another which servitude is reasonably necessary for the fair enjoyment of the latter property. . . . In the absence of common ownership . . . however, an easement by implication may arise based on the actions of the adjoining property owners. . . . There are two principal factors to be examined in determining whether an easement by implication has arisen: (1) the intention of the parties; and (2) whether the easement is reasonably necessary for the use and normal enjoyment of the dominant estate." (Citations omitted.) Kenny v. Dwyer,16 Conn. App. 58, 64, 546 A.2d 937, cert. denied, 209 Conn. 815,550 A.2d 1084 (1988); see also D'Amato v. Weiss, 141 Conn. 713, 717,109 A.2d 586 (1954).
"[I]n so far as necessity is significant it is sufficient if the easement is highly convenient and beneficial for the enjoyment of the dominant estate." (Brackets in original; CT Page 7257 internal quotation marks omitted.) Friedman v. Town of Westport,50 Conn. App. 209, 214, 717 A.2d 797 (1998). "[A]bsolute necessity is not essential . . . because fundamentally such a grant by implication "depends on the intention of the parties as shown by the instrument and the situation with reference to the instrument, and it is not strictly the necessity for a right of way that creates it.'. . . [T]he creation of such an easement depends on the intention of the parties as shown by the deed and the situation with reference to it. In all cases of this character, the conception underlying the creation of an easement by implication is that the parties are presumed to have intended the grant of an easement." (Citations omitted.) D'Amato v. Weiss, supra, 141 Conn., 717-18.
"The principle underlying the creation of an easement by implication is that it is so evidently necessary to the reasonable enjoyment of the granted premises, so continuous in its nature, so plain, visible and open, so manifest from the situation and relation of the two tracts that the law will give effect to the grant according to the presumed intent of the partes." (Internal quotation marks omitted.) Rischall v.Bauchmann, 132 Conn. 637, 645, 46A.2d 898 (1946). "[W]here an easement is conveyed, what is necessary for the enjoyment of the easement and without which it would be useless passes by implication." Gager v. Carlson, 146 Conn. 288, 292, 150 A.2d 302
(1959).
In the present case, the easement was created by deed from Witherell to the FPLC "for all purposes of travel." It could be presumed that the intent of the parties was that the FPLC would be permitted to use Glenwood Drive in Belle Haven. If not, the language of the deed creating the easement would be superfluous. Furthermore, the evidence at trial indicated that although there is an alternate access from the Il Giardino parcel to a public road in Field Point, that access is over a "terrifyingly steep" and treacherous driveway. Also, in a letter from the BHLC to Il Giardino dated February 6, 1996, BHLC conceded that the driveway is steep and not accessible by emergency vehicles. (Exhibit 27: Letter from the BHLC to Mr. Schulmeyer). The letter indicates that "[the easement] was permitted to be used by emergency vehicles and equipment which was too large to access the property by means of the steep driveway. The Belle Haven Land Company will continue to permit such access [over the easement]. . . ." (Exhibit 27: Letter from the BHLC to Mr. Schulmeyer). This court concludes, based on the evidence presented at trial, that CT Page 7258 Glenwood Drive was "necessary for the enjoyment of the easement" and without it, the easement expressly granted to the FPLC would be useless.
This case is similar to Toms v. Settipane, 30 Conn. Sup. 374,317 A.2d 467 (1973). In that case, an easement was granted by deed to the defendants to allow them to travel over a path from their property to the beach. The language of the deed indicated that the land granted to the defendants was conveyed "together with a right of way over a footpath to the beach on Long Island Sound, along other land of the grantor lying immediately southerly of said Lot 1." Id., 379. The easement conveyed to the defendants was only eighteen inches wide. Id. The plaintiff argued that the defendants were only permitted to use eighteen inches of the beach, the width of the easement.
However, the court, Shea, J., held that "[i]t is preposterous . . . to construe the deed . . . as creating an easement upon the beach limited to the width of the footpath, eighteen inches." Id., 381. The court found that "when the [defendants' predecessors in title] were given a `right of way over a footpath to the beach on the Long Island Sound,' their grantor could hardly bar them from coming upon the beach by claiming that the beach was referred to merely as a boundary at one end of the footpath. Obviously the grantees were expected to go upon the beach and to enjoy themselves once they got there." Id. The court concluded that the defendants had the right of way to go upon the beach.
The present case is similar to Toms v. Settipane, supra,30 Conn. Sup. 374. Here, Witherell granted an easement "for all purposes of travel twenty feet wide . . . to the Belle Haven Road, known as Glenwood Drive." It is absurd to construe the deed as granting an easement twenty feet wide ending at, but not continuing on, Glenwood Drive. After all, the easement was created "for all purposes of travel." Obviously the grantees were expected to go upon Glenwood Drive and use it for travel. Construing the deed otherwise would mean that the FPLC, the plaintiffs predecessor in title, had an easement to nowhere. It would mean that the FPLC could only "travel" up and down the twenty foot easement.
Again, the defendants argue that Witherell could not have granted an easement over the roads of Belle Haven because he did not own the roads. It is true that "a grantor could not CT Page 7259 effectively convey a greater title than he possesses."Stankiewicz v. Miami Beach Association, Inc., supra,191 Conn. 170. However, Witherell did not grant a greater title than he possessed. Witherell had the "right to use in common with others . . . the ways and avenues of [the BHLC] as the same may be necessary and convenient in passing to and from said premises hereby conveyed." (Exhibit 1: Deed in Book 77, p. 242). Witherell had the right to use the ways and avenues of Belle Haven, and that is what he conveyed to the FPLC, the plaintiffs predecessor in title. (Exhibit 3: Deed in Book 89, p. 376).
The plaintiffs rights, stemming from the easement, are similar to those of a lessee who leases property, or even a single room, in Belle Haven. If a person rents a single room in a house located in Belle Haven, that person would have the right to travel over the roads of Belle Haven even though they do not own the property in fee simple. To conclude any other way would be absurd. Belle Haven would not be able to prohibit a lessee of a single room in a house in Belle Haven from using the private roads of the association. Moreover, the evidence at trial indicated that all members of the Belle Haven Club, whether or not they own property in fee simple in Belle Haven, as well as their guests, are permitted to drive on the private roads of Belle Haven.
Furthermore, the defendants concede that "there are no restrictions on the leasing of private homes within the private association . . . [and any] individual leasing or renting a private home in Belle Haven has the same rights and obligations as the owner of said property with respect to its use." (Defendants' Supplemental Post Trial Memorandum, p. 2). The defendants concede that "[a] tenant or lessee . . . would also have the right to use whatever roads are permitted to be used by the owner of the property." (Defendants' Supplemental Post Trial Memorandum, p. 2). The plaintiff argues, and this court agrees, that the leasing of a private home, or even a single room in a home located in Belle Haven, is similar to the easement. Though the plaintiff does not own the property (the easement) in fee simple, it still obtains the rights and obligations that go with it. Obtaining an easement, which consists of property located in Belle Haven, is similar to leasing a room in Belle Haven. Therefore, the plaintiff obtained the right to travel over the private roads of Belle Haven when it obtained the rights associated with the easement.[2]
CT Page 7260
 CONCLUSION
The plaintiff seeks a permanent injunction to have the barrier removed and to preclude the defendants from blocking the easement. "Injunction is the proper remedy to stop interference with an [owner's] use and enjoyment of an easement. . . . They are not issued as of right, but in the sound discretion of the court." Gerald Park Improvement Association v. Bini,138 Conn. 232, 236, 83 A.2d 195 (1951). For the aforementioned reasons, and with the sound discretion of this court, it is found that the plaintiff has sustained its burden of proof and that it has title in the twenty (20) foot easement and enjoys the right to travel over Glenwood Drive and other roads in Belle Haven. Therefore, a permanent injunction is entered in favor of the plaintiff, and the defendants are hereby ordered to remove the barrier and are prohibited from erecting any such barrier that may block the plaintiffs easement. The defendants are further ordered to allow the plaintiff to use the appurtenant roads of the BHLC. Judgment is ordered pursuant to the aforementioned in favor of the plaintiff.
Mintz, J.