THE PARK CONSTRUCTION COMPANY *v.* THE PLANNING AND ZONING BOARD OF APPEALS OF THE TOWN OF GREENWICH ET AL.

BALDWIN, O'SULLIVAN, WYNNE, DALY and SHEA, Js.

Argued October 19---decided December 21, 1954

*Sydney C. Winton,* of the New York bar, and *William C. Strong,* with whom, on the brief, was *Daniel P. Hays,* of the New York bar, for the appellant (plaintiff).

*Kenneth F. Clark,* for the appellee (defendant Parish of Christ Church).

*Charles R. Covert,* for the appellee (named defendant).

*Cyril Coleman,* with whom, on the brief, was *C. Duane Blinn,* as amicus curiae.

BALDWIN, J.  On December 17, 1952, the plaintiff made application to the building inspector of Greenwich for a permit to erect five multifamily dwellings upon land in Greenwich which it leases, with an option to purchase, from the estate of Elizabeth M. Ashforth.  The inspector refused the permit.  This is an appeal from a judgment of the Court of Common Pleas sustaining the planning and zoning board of appeals, which had denied the plaintiff's appeal from the ruling of the inspector.  The Parish of Christ Church, Greenwich, was joined with the board as a party defendant.  Counsel for the trustee under the will of Elizabeth M. Ashforth argued the cause as amicus curiae.

The land upon which the plaintiff proposed to erect the five multifamily dwellings, each to have forty separate apartments, is an interior lot, hereinafter referred to as parcel C.  It consists of 10.38 acres lying south of East Putnam Avenue and east of Milbank Avenue.  The only portion of it which adjoins a public highway is a strip 60 feet in width, extending northerly for approximately 500 feet along

the easterly boundary of land owned by the Parish of Christ Church to East Putnam Avenue, where it broadens to provide a frontage of 80 feet. Between the interior portion of parcel C and Milbank Avenue on the west there is a multifamily housing development known as Putnam Park on a parcel of land 12.064 acres in area which fronts on Milbank Avenue. This parcel will be referred to hereinafter as parcel B. Both parcels were formerly owned by the estate of Elizabeth M. Ashforth. On November 30, 1949, the trustee of that estate conveyed parcel B to the Pierce Construction Co., Inc., which erected the housing development. At that time the trustee reserved for the benefit of parcel C a right of way fifty feet wide across parcel B to Milbank Avenue. This right of way appears upon a map entitled "Property of Trust Estate of Elizabeth Milbank Ashforth, Greenwich, Connecticut." The map, which is specifically referred to in the agreement making the reservation, was approved by the commissioner of public works of Greenwich and placed on file with the town clerk on November 30, 1949. It was proposed that an improved roadway twenty feet in width extending easterly from Milbank Avenue to a traffic circle or turnabout located in part on parcel C would be constructed. The portion of parcel C upon which the plaintiff seeks permission to erect multifamily dwellings is in an R-MF (residence multifamily) zone where they are permitted. The portion of parcel C which constitutes the strip sixty feet wide extending northerly from the interior portion of parcel C to East Putnam Avenue is entirely within an R-6 (residence-6) zone, where multifamily dwellings are not allowed. Greenwich Bldg. Zone Regs., §§ 8, 9 (1952). The inspector denied the plaintiff's application for a permit because the property did not front upon or have access

to a street, as required by the building zone regulations.[1] We point out that the case does not present any question of variance or special exception.

The plaintiff contends that the inspector's reasoning was erroneous since parcel C met the requirements of the regulations regarding access to a public street in three separate manners. First, the sixty-foot strip extending northerly to East Putnam Avenue provided the requisite access in compliance with § 19 of the regulations. Second, parcel C has the necessary frontage in that it abuts for eighty feet on East Putnam Avenue. Third, the right of way running westerly from parcel C through Putnam Park to Milbank Avenue also met the requirements of § 19. We shall take these up seriatim.

As to the first, the plaintiff contends that the use of the sixty-foot strip as a passway would be incidental to the principal use permitted on the interior

---

[1] "Sec. 19. SUPPLEMENTARY AREA AND HEIGHT REGULATIONS INCLUDING GENERAL EXCEPTIONS. . . . f. Minimum street width. No plot shall hereafter be subdivided into lots and no lots shall hereafter be improved with one or more dwellings unless all such lots shall front upon a street having a minimum width of 50 feet. This limitation however shall not apply where the maximum width of the street in front of a given plot or lot at the time of the passage of these regulations is less than 50 feet. . . . m. Minimum frontage exceptions. A rear lot, whether or not in separate ownership and whether or not the rear or front lots are presently built upon, not fronting on a street may be permitted in any zone, provided that such lot has access to a street by means of an unobstructed access way held in the same ownership as said rear lot, that such access way is at least 20 feet wide, and that within the lines of such access way there shall be constructed a gravelled or other paved way sufficient in width and thickness to accommodate fire apparatus and other mobile equipment, and provided further that for the purpose of these regulations, such access way shall not be included as part of the rear lot. Structures located on such rear lot shall conform to all requirements of these regulations, and the owner of such rear lot shall have the privilege of electing any lot line as the front lot line. . . ."

portion of parcel C and would, therefore, be a permissible accessory use.[2]  Although the sixty-foot strip lies within an R-6 zone, the regulations for such a zone do not expressly proscribe its use as an access way.  Section 8 of the regulations concerns uses permitted in an R-6 zone.  It catalogues the permitted principal uses, which do not include multi-family dwellings such as the plaintiff proposes to erect, and lists the accessory uses which are allowed and those which are denied.  The use of land as an access way to an interior lot is not specifically mentioned.  It is true that zoning regulations are in derogation of common-law rights and they cannot be construed to include or to exclude by implication that which is not clearly within their express terms. *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 638, 109 A.2d 256; *Danbury* v. *Corbett,* 139 Conn. 379, 384, 94 A.2d 6; *Langbein* v. *Board of Zoning Appeals,* 135 Conn. 575, 580, 67 A.2d 5; 8 McQuillin, Municipal Corporations (3d Ed.) § 25.72.  Therefore, argues the plaintiff, the proposed use should be permitted since it is not expressly prohibited.  This

[2] See Greenwich Bldg. Zone Regs., §§ 4, 6, 7, 8, 9. Section 4 reads in part: "DEFINITIONS. . . . Building, Accessory or Accessory Use. A building or use subordinate to the principal building or use on the same lot." Sections 6, 7, 8 and 9 contain the use regulations for residence zones. Section 6 applies to RA-4 and four other classes of zones, § 7 to R-7 zones, § 8 to R-6 zones, and § 9 to R-MF zones. Each section sets forth in subsection (a) the principal uses permitted, in subsection (b) the accessory uses permitted, and in subsection (c) the accessory uses prohibited. Subsection (b) of §§ 8 and 9 reads as follows: "b. Accessory uses permitted. Same as in R-7 zones." Subsection (b) of § 7 reads in part: "b. Accessory uses permitted. (1) The same accessory uses as in RA-4 zones. . . ." Subsection (b) of § 6 reads: "b. Accessory uses permitted. Customary uses incident to the principal uses in a. above, including [five types of accessory uses, none of them pertinent to the present case]."

argument, however, stands upon the assumption, first, that the use of the sixty-foot strip as a passway is accessory to a residential use, and second, that as such an accessory use it can be extended across a zone boundary. The plaintiff must concede that the accessory residential use it claims is incidental to a principal use of parcel C for multifamily dwellings. It therefore partakes of the nature of the residential use allowed in an R-MF zone rather than of the residential use allowed in an R-6 zone. *Abbadessa* v. *Board of Zoning Appeals,* 134 Conn. 28, 32, 54 A.2d 675; *First National Bank & Trust Co.* v. *Zoning Board of Appeals,* 126 Conn. 228, 235, 10 A.2d 691; *Yonkers* v. *Rentways, Inc.,* 304 N.Y. 499, 503, 109 N.E.2d 597; *Matter of Monument Garage Corporation* v. *Levy,* 266 N.Y. 339, 344, 194 N.E. 848; *Brookline* v. *Co-Ray Realty Co.,* 326 Mass. 206, 212, 93 N.E.2d 581; see *Mellitz* v. *Sunfield Co.,* 103 Conn. 177, 184, 129 A. 228; *Laughlin* v. *Wagner,* 146 Tenn. 647, 657, 244 S.W. 475. To paraphrase what was stated by the court in *Yonkers* v. *Rentways, Inc.,* supra, 503, it can hardly be said that the day-in-day-out passage of vehicles and other traffic going to and from five multifamily dwellings, housing 200 families, over the sixty-foot strip to East Putnam Avenue would be anything but a use of the strip for multifamily dwelling purposes. It certainly would not be a use accessory to a single-family dwelling, the type permitted in an R-6 zone. The regulations do permit a customary accessory use which is incident to the principal use located on the same lot. However, § 19(m), upon which the plaintiff relies, provides that an access way shall not be included as part of a rear lot. The effect of this provision in the instant case is the severance of the sixty-foot strip

from the interior portion of parcel C at the very location of the boundary line between the R-MF and R-6 zones.

The plaintiff also maintains, in furtherance of its first contention, that under the regulations an interior lot, regardless of how it is zoned or the use to which it is to be put, must have access to a street. Such access, it claims, is a substitute for the street frontage required by the regulations. Therefore, it says, the sixty-foot strip is not truly a part of the lot at all but is, in effect, a kind of street, and so, under §§ 4 and 5 of the regulations, it is neutral ground to which they have no application.[3] In support of this argument it cites *Beckmann* v. *Township of Teaneck,* 6 N.J. 530, 536, 79 A.2d 301; *State ex rel. Szodomka* v. *Gruber,* 201 La. 1068, 1077, 10 So. 2d 899; *Faulkner* v. *Keene,* 85 N.H. 147, 159, 155 A. 195; *Home Fuel Oil Co.* v. *Board of Adjustment,* 5 N.J. Super. 63, 66, 68 A.2d 412; *Prospect Park Borough* v. *McClaskey,* 151 Pa. Super. 467, 470, 30 A.2d 179. Some of these cases by reason of their peculiar facts, and others by reason of the form of procedure in which the question involved was presented, can be distinguished from the one at bar. In any event, we cannot hold upon the circumstances of this case that this use of the sixty-foot strip as an access way for traffic going to and from the proposed five multi-family dwellings designed to accommodate forty families each could be called a neutral use or one that was not incidental and indispensable to a use

---

[3] "[Greenwich Bldg. Zone Regs.] Sec. 4. DEFINITIONS. . . . Street. The term 'street' includes all public and private streets, highways, avenues, boulevards, parkways, roads, and other similar ways. . . .

"Sec. 5. USES NOT GOVERNED BY THESE REGULATIONS. . . . a. Streets, parks, playgrounds, public school grounds, and other lands of town, county, state or federal government used for public purposes."

permitted only in an R-MF zone. On the plaintiff's first claim, the ruling of the inspector, which was sustained by both the board and the court, was correct.

The plaintiff's second contention is that the eighty-foot frontage on East Putnam Avenue provides the access required under § 19(f) of the regulations. This section must be read with § 19(m). The latter specifically states that an access way cannot be regarded as part of the interior lot to which it furnishes access. Under the regulations, the sixty-foot strip which lies north of the zone boundary is, in effect, a separate parcel of land and subject to the regulations prescribed for zone R-6, in which it is located. The plaintiff gains nothing under its second contention.

The plaintiff's third contention is that a permit should issue because the interior lot upon which it proposes to erect the five multifamily dwellings has access to Milbank Avenue over the private road extending from the traffic circle partly within parcel C through parcel B to Milbank Avenue. As stated heretofore, on November 30, 1949, parcel B and parcel C were both owned by the estate of Elizabeth M. Ashforth. On that date the trustee of the estate conveyed parcel B to the Pierce Construction Company, reserving a right of way fifty feet wide from parcel C through parcel B to Milbank Avenue. A roadway twenty feet in width, extending the entire length of the right of way, was constructed. A map showing this right of way, approved by the commissioner of public works on November 30, 1949, was filed with the town clerk on that same day. At this time, the commissioner of public works was the officer of the town of Greenwich charged with powers and duties pertaining to the layout of new highways.

18 Spec. Laws 832, § 20, as amended by 21 Spec. Laws 204, 23 Spec. Laws 339 § 27, 340 §§ 28, 31. The map could not have been filed without his approval. General Statutes § 7125. It also appears that the board of zoning appeals, as then constituted, approved the construction of multifamily dwellings on parcel B to house 194 families and that these were subsequently constructed. Greenwich Board of Zoning Appeals Applications Nos. 1477, 1566, 1569, 1650. The right of way appeared on the maps submitted to the board with the applications. It is not necessary to decide whether the right of way was accepted as a public highway. It was at least a private road extending into parcel C and over which it was contemplated that vehicular and other traffic would flow. *Stratford* v. *Fidelity & Casualty Co.,* 106 Conn. 34, 39, 137 A. 13; *Whitton* v. *Clark,* 112 Conn. 28, 32, 151 A. 305; *Merino* v. *George F. Fish, Inc.,* 112 Conn. 557, 562, 153 A. 301; *Lake Garda Co.* v. *D'Arche,* 135 Conn. 449, 453, 66 A.2d 120; *Gerald Park Improvement Assn.* v. *Bini,* 138 Conn. 232, 235, 83 A.2d 195; 1 Elliott, Roads & Streets (4th Ed.) pp. 142, 143, § 124. It was a "street," as that term is defined in § 4 of the regulations, and it provided access to Milbank Avenue, admittedly a public highway. Therefore, even apart from the question whether parcel C was served by an access way satisfying the requirements of § 19(m), parcel C did have the necessary access to a street by virtue of the fact that it fronted on a "street" within the fair intendment of § 19(f). The defendants argue that if the right of way was developed to its full width the requirements of the regulations as to the location of proposed buildings with reference to it would be violated. The board nevertheless permitted the development of Putnam Park, including the road-

way running through it. Whatever objection may now be raised to the use of this private road as access to parcel C, the road exists as a fait accompli and must be dealt with as such. The inspector was in error when he denied the plaintiff's application on the ground that parcel C would not, under the regulations, have lawful access to Milbank Avenue. The plaintiff was entitled to a permit on this claim. This conclusion makes it unnecessary to discuss the other claims advanced by it.

There is error, the judgment is set aside and the case is remanded with direction to sustain the plaintiff's appeal.

In this opinion the other judges concurred.