THE J & M REALTY COMPANY *v.* BOARD OF ZONING APPEALS OF THE CITY OF NORWALK

HOUSE, THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued April 7—decided June 1, 1971

*Frank W. Murphy,* corporation counsel, with whom, on the brief, was *Terrence J. Murphy, Jr.,* for the appellant (defendant).

*David Goldstein,* with whom, on the brief, was *Charles M. Needle,* for the appellee (plaintiff).

HOUSE, C. J. On May 4, 1967, the plaintiff applied to the building inspector of the city of Norwalk for a building permit to construct a scrap-processing plant on a parcel of land consisting of about eight and three-quarters acres located in an area classified under the zoning regulations of the city of Norwalk as a heavy industrial zone. The building inspector denied the application on the ground that the proposed use was in conflict with § 6 (17) of the zoning regulations.[1] Thereupon, the plaintiff appealed the decision of the building inspector to the defendant board of zoning appeals, claiming that the intended use of the property was not a prohibited use under the specified regulation. The defendant conducted a public hearing after which it sustained the decision of the building inspector. From this decision the plaintiff appealed to the Court of Common Pleas alleging its aggrievement by the decision and that the defendant board had acted illegally, arbitrarily and in abuse of its discretion because no zoning regulation prohibited the construction of the plaintiff's proposed scrap-processing plant and such a plant was not in conflict with § 6 (17) of the Norwalk zoning regulations.

---

[1] "[Norwalk Zoning Regulations (1929, as amended)] Section 6 – Use Regulations Controlling Heavy Industrial Zones. . . .

"17. In a heavy industrial zone no premise shall be used as a junk yard, motor vehicle junk business or motor vehicle junk yard, and no premises shall, after the effective date hereof, be arranged, intended, used or designed to be used for such purposes.

"All premises now in use for such purposes in the City of Norwalk shall, after the effective date hereof, be maintained and used in strict accordance with the 'Regulation Concerning the Licensing of and Operation of Motor Vehicle Junk Yards' issued by the Commissioner of Motor Vehicles, State of Connecticut, as now in effect or as hereafter revised."

The Court of Common Pleas sustained the appeal. After viewing the premises involved and the surrounding area and reviewing the record on which the defendant board based its decision, the court concluded that the plaintiff was aggrieved by the decision of the defendant board, that the proposed use of the property as described by the plaintiff in its application for a building permit and as described by evidence presented at the public hearing was not a junk yard, motor vehicle junk business or motor vehicle junk yard, and, accordingly, not in violation of § 6 (17) of the zoning regulations but was a permitted use and not a prohibited use under the regulations. From that judgment the defendant has taken this appeal.

The plaintiff has reprinted in the appendix to its brief a copy of the transcript of the hearing held on its appeal to the defendant board. The metal scrap-processing plant proposed by the plaintiff was described in detail to the board. In brief, the plaintiff planned to erect a building to which would be brought by train, trailer and barge the compressed frames of dismantled automobiles, already compacted at other sites, after the bodies had been burned out and stripped of motors, transmissions, fuel tanks, seats, cushions, tires, batteries and radiators so that all identity as motor vehicles will have disappeared. The remaining metal shell, before arrival at the plant, will have been compressed into "almost a sheet of steel, 22 feet by seven feet by one foot." By its manufacturing process the plaintiff will produce from these forms fist-sized pellets of steel for use in steel mills.

The zoning regulations contain no definition of the terms "junk yard," "motor vehicle junk business" or "motor vehicle junk yard" as those words are used

in § 6 (17) of the Norwalk regulations. A suggestion as to their intended meaning, however, arises from the reference in that section to "Regulation Concerning the Licensing of and Operation of Motor Vehicle Junk Yards" issued by the commissioner of motor vehicles. These regulations are issued pursuant to the authority contained in § 21-22 of chapter 406 of the General Statutes. General Statutes § 21-15 defines "[m]otor vehicle junk business" and "motor vehicle junk yard" as including "any business and any place of storage or deposit, whether in connection with another business or not, which has stored or deposited two or more unregistered motor vehicles which are no longer intended or in condition for legal use on the public highways, or used parts of motor vehicles or old iron, metal, glass, paper, cordage or other waste or discarded or secondhand material which has been a part, or intended to be a part, of any motor vehicle, the sum of which parts or material shall be equal in bulk to two or more motor vehicles. Said terms shall also include any place of business or storage or deposit of motor vehicles purchased for the purpose of dismantling the vehicles for parts or for use of the metal for scrap and where it is intended to burn material which are parts of a motor vehicle or cut up the parts thereof." Clearly, the proposed manufacturing process does not come within the terms of that definition and, since the plaintiff will be neither buying nor selling the raw crushed metal on its premises, its manufacturing plant does not fall within the common understanding of "junk yard." Nor do the historic reasons for licensing junk yards and the operation of a junk business apply to the proposed factory use. See *Leach* v. *Florkosky,* 145 Conn. 490, 144 A.2d 334; *Clapp* v. *Ulbrich,* 140 Conn.

637, 103 A.2d 195; *State* v. *Rosenbaum,* 80 Conn. 327, 68 A. 250. Paraphrasing the language of the court in *Leach* v. *Florkosky,* supra, 496, "[t]he purpose of the statutes relative to motor vehicle junk yards is not served by applying their provisions to a business like that of the plaintiff, and an interpretation which extends the terms of § 21-15 to embrace the plaintiff's business is unrealistic and results in an application of the statute to a situation in which no relationship to the promotion of the public welfare is discernible."

Zoning regulations, being in derogation of common-law property rights, should not be extended by construction beyond the fair import of their language and cannot be construed to include by implication that which is not clearly within their express terms. *Park Construction Co.* v. *Planning & Zoning Board of Appeals,* 142 Conn. 30, 35, 110 A.2d 614; *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 638, 109 A.2d 256; *Langbein* v. *Board of Zoning Appeals,* 135 Conn. 575, 580, 67 A.2d 5.

Our examination of the record and the transcript of the public hearing as printed in the appendix to the brief of the plaintiff discloses that the court properly concluded that no relevant evidence was introduced there to demonstrate that the plaintiff's proposed use of the property was in violation of the Norwalk zoning ordinances then in effect.

There is no error.

In this opinion the other judges concurred.