Martin Media is a California Limited Partnership duly qualified to do business in the State of Connecticut. The Partnership is involved with outdoor advertising which includes the construction and maintenance of outdoor advertising structures and the sale of space on such structures for advertising purposes. The Partnership leased a certain portion of the property located on Rt. 9 in Middletown, Connecticut. The purpose of the lease is to construct and maintain an outdoor advertising structure by Martin Media on the property. The subject property is located B-2 zone, which zones permit the construction of outdoor advertising structures in accordance with Sec. 48.04.01 of the Zoning Code of the City of Middletown entitled "The Zoning Code". On August 12, 1993 Martin Media made an application to the office of Planning and Zoning of the City of Middletown to obtain a permit for the construction of an outdoor advertising structure on the subject property. The application provided that the proposed structure of Martin Media would contain one outdoor advertising sign with one face 48' in length and 14' in height. On September 8, 1993 the commission denied approval of the site plan provided in the application which site plan approval is required under Sec. 55 of the zoning code.
A copy of the lease between Martin Media and the owner of the subject premises has been offered in evidence. Based upon the evidence presented before the court including the exhibit consisting of the lease, the court draws a logical and reasonable CT Page 11678 inference that Martin Media is aggrieved by the commission's decision. After the offer of said evidence the attorney representing the defendant Commission represented that aggrievement was not contested and agreed that aggrievement had been established by fair preponderance of the evidence.
Sec. 55.01 of the Zoning Code provides that it would be unlawful to construct or erect any structure unless such proposed development shall have received site plan approval. Accordingly, the applicant filed such a site plan indicating thereon the position, the size, and design of the proposed sign. The court has reviewed the record as returned and filed with this court. Part of that record is a transcript of the regular meeting of the Planning and Zoning Commission of September 8, 1993. William Warner, which the court infers from the record to be the Director of the Planning and Zoning, made a brief statement to the Commission concerning the allowance of the sign in question and his concluding remarks were that he would recommend that the Commission deny the application. Without further discussion or the taking of any further evidence the following action occurred.
(Commission Stephen Shapiro)
 "Mr. Chairman, I would like to move the recommendation of the Planning and Zoning Director and I would like to move a strict interpretation and denial of this application."
 Unknown Commissioner: Second.
 Chairman W. Lee Osborne Motion is made and seconded. Is there any discussion on that motion? There being none, we will vote. All those in favor say aye.
 Commissioners Aye
 Chairman W. Lee Osborne All those opposed say nay.
 Commissioners No response CT Page 11679
 Chairman W. Lee Osborne Motion carries
Effectively the Commission adopted the brief statement of William Warner, the Director of Planning and Zoning as the reason for the denial. On the evening in question there were two application with site plans for approval of two separate sign locations by the same applicant. Mr. Warner in his brief statement and recommendation addressed each of those separate applications. The court in this decision is concerned only with the sign proposed to be located on property of Caffe Digandomenico bounded on the south by DeJohn Drive and bounded on the south west by Route 9. The court culled out and separated those remarks of William Warner that are applicable to this subject sign application. The court is satisfied that Mr. Warner's remarks were addressed so that the Commission understood the opinion and recommendation that the commission thereafter adopted as to this particular sign application.
Mr. Warner represented the proposed sign was to be located on a parcel upon which there is a single family non-conforming house. Using the tables set forth in the Code, the allowable sign for premises used for single residential purposes is two square feet. Warner represents further that if the size of the sign were to be determined by the regulation governing billboards, the sign permitted would be 48 x 14 or 672.00 sq. feet.
The Director acknowledges that there is a conflict within the code assumedly between the tables as set out in Sec. 14.04 and the billboard requirements as set out in Sec. 48.04.01. He concludes further "when there is a conflict, the more stringent requirement applies," and further concludes "we should deny this application because of the more stringent requirements."
Thereafter, there was a motion to accept the recommendation of the Planning and Zoning Director and a motion to apply the strict interpretation and denial of the application. This motion carried.
The reason and only reason that the court can determine as I given by the Commission is that conclusion and determination by the Director that the stricter more stringent requirement of Sec. 14.04 apply.
The Pertinent Code Sections are as follows: CT Page 11680
48.04 SIGN STANDARDS
NUMBERS MAXIMUM USE PERMITTED AREA LOCATION ILLUMINATION ------------------------------------------------------------------------ ON A SINGLE BUILDING FAMILY OR FREE DWELLING 1 2 sq. ft. STANDING EXTERNAL ------------------------------------------------------------------------ RESIDENTIAL ON A UNIT BUILDING BUSINESS OR FREE PURSUIT 1 2 sq. ft. STANDING EXTERNAL ------------------------------------------------------------------------ ATTACHED ON A DWELLING BUILDING INTERNAL UP TO 10 OR FREE OR UNITS 1 6 sq. ft. STANDING EXTERNAL ------------------------------------------------------------------------ ATTACHED ON A DWELLING BUILDING INTERNAL 11 OR MORE OR FREE OR UNITS 1 12 sq. ft. STANDING EXTERNAL ------------------------------------------------------------------------ INSTITUTIONAL (CHURCH, SCHOOL, 1 ON A LIBRARY, MUSEUM, per 24 sq. BUILDING INTERNAL HOSPITAL, CLUB, street ft. OR FREE OR SIMILAR USES) frontage per sign STANDING EXTERNAL ------------------------------------------------------------------------ 1 sq. ft. per bldg. length on OFFICE 1 street up ON A (COMMERCIAL per to 200 BUILDING INTERNAL OR street sq. ft. OR FREE OR PROFESSIONAL) frontage maximum STANDING EXTERNAL ------------------------------------------------------------------------ 2 sq. ft. per bldg. length on 3 street up ON A COMMERCIAL per to 300 BUILDING INTERNAL CT Page 11681 (INTERNAL street sq. ft. OR FREE OR USE) frontage max. STANDING EXTERNAL ------------------------------------------------------------------------ 2 sq. ft. COMMERCIAL frontage (EXTERIOR up to 300 ON A USE i.e. sq. BUILDING INTERNAL AUTO SALES, ft. OR FREE OR GAS STATIONS) 6 maximum STANDING EXTERNAL ------------------------------------------------------------------------ 2 sq. ft. per bldg. length on street up ON A 2 per to 300 BUILDING INTERNAL street sq. ft. OR FREE OR INDUSTRIAL frontage maximum STANDING EXTERNAL ------------------------------------------------------------------------
48.04.01 OUTDOOR ADVERTISING SIGNS
 Outdoor Advertising Signs are permitted in B-2, General Business Zones, I-I, Service Industrial Zones and I-2, Restricted Industrial Zones on lots having not less than fifty (50) Linear feet of street frontage. Such signs shall not contain over two (2) signs per facing, neither sign exceeding an area of three hundred (300) sq. ft; provided that in lieu of two (2) signs, one sign per facing shall be permitted, in which event no such sign shall exceed an overall length of forty-eight (48) feet nor a vertical dimension of fourteen (14) feet, exclusive of cutouts and/or embellishments.
 No outdoor advertising sign shall be permitted to be erected within (50) feet of an adjoining Residence Zone if designed to face directly into such zone and be visible therefrom.
 No outdoor advertising sign structure to be located within six hundred sixty (660) feet of an to be visible from any interstate highway (including I-91) shall be permitted to be erected within five hundred (500) feet of any other such structure on CT Page 11682 the same side of the road.
Other sign definition that may lend to interpretation of the aforesaid Sec. 48.04 and Sec. 48.04.01.
48.01.06 SIGNS. OUTDOOR ADVERTISING
 A sign which directs attention to a business, product, activity or service which is generally conducted, sold or offered elsewhere than upon the premises where such sign is located.
48.02.02 INSTITUTIONAL SIGNS
 Signs setting forth the name or any simple announcement for any public, charitable, educational or religious institution located entirely within the premises of that institution, up to an area of twenty-four (24) sq. ft. Such signs may be illuminated in accordance with the regulations contained hereinafter. If building mounted, these signs shall be flat wall signs and shall not project above the roof line. If ground mounted, the top shall be no more than six (6) feet above ground level.
48.01.04 SIGN, BUSINESS
 A sign which directs attention only to a business, commodity, service, activity, or product sold, conducted or offered upon the premises where such sign is located
If one were to accept the interpretation for the Application of Sec. 48.04 and Sec. 48.04.01 as applied in the present case, Sec. 48.04.01 would only become applicable for vacant lots in B.2 Zones. If any building structure were to be located thereon the number, size and positioning would be governed by Sec. 48.04.
The subject premises is in a B.2 Zone. On premise is located a non conforming residential home. The site plan showed a second building structure having a footprint of equal size to the existing resident identified as a one story frame under construction. There is also shown an above ground pool. There is nothing in the record indicating that there is any other sign located anywhere within the CT Page 11683 boundary of the subject lot. The lot itself measures in excess of 200' by 200'. The proposed billboard is positioned in the rear corner facing Route 9.
The Commission argues that because the use of the premises is residential the maximum area of any sign is 2 sq. ft. Section 16 of the Code is definitions:
SECTION 16.21.02 USE
 The principal purpose for which a lot or the main building thereon is designed, arranged or intended and for which it is used may be used, occupied or maintained.
Although representation were made to the Commission by Mr. Warner, "Or a commercial site by the table they could have three hundred square feet" the record is silent as to any "use" of a commercial nature.
Billboard outdoor advertising signs are permitted in a B-2 zone pursuant to Sec. 48.04.01. The construction of same in accordance with the code does not expand the residential nonconforming use. Sec. 33.01 Uses in B-2 general zone states, "No land shall be used or occupied and no structure shall be erected, constructed, reconstructed altered or used except for use which is indicated in the B-2 column of Use Schedule Sec. 61 of this zoning code and shall be subject to such provisions as referred to in that column."
The principles governing the interpretation of zoning regulations are well settle. Zoning regulations are in derogation of common law property rights and cannot be construed to include or exclude by implication what is not clearly within their expressed terms. Planning and Zoning Commission of the Town of Lebanon v.Gilbert, 208 Conn. 696, 705, 546 A.2d 823, 828 (1988); Melody v.Zoning Board of Appeals, 158 Conn. 516, 521, 264 A.2d 572 (1969). They should also not be extended by construction beyond the fair import of their language. JM Realty Co. v. Board of ZoningAppeals, 161 Conn. 229, 223, 286 A.2d 317, 319 (1971). In addition, a property owner should be able reasonably to ascertain from the regulations how to use the property in compliance with the regulations. Gilbert, supra, Shell Oil Co. v. Zoning Board ofAppeals, 156 Conn. 66, 70, 238 A.2d 426, 428 (1968). CT Page 11684
Words used in zoning regulations are interpreted in accordance with the natural and usual meaning. Schwartz, supra.Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 511,264 A.2d 552 (1969). Further, the words employed in joining regulations are construed according to the commonly approved usage of the language.Fisher v. Zoning Boards of Appeals, 143 Conn. 358, 361,122 A.2d 729, 730 (1956).
Whenever possible, the language of zoning regulations should be construed so that no clause is deemed superfluous, void or insignificant. The regulations must be interpreted so as to reconcile provisions and make the operative so far as possible.
When more than one construction is possible, the court will adopt the one that renders the regulations effective and workable and reject any that might lead to unreasonable or bizarre results.Gilbert, supra, citations omitted.
In reviewing the actions of a commission, the court must independently determine whether the commission correctly interpreted the regulations and applied it with reasonable discretion under the facts. Schwartz v. Hamden Planning and ZoningCommission, 208 Conn. 146, 152, 543 A.2d 1339, 1343 (1988).
The answer is simply the recognition of the difference between signs, in general, and outdoor advertising signs, in particular. Outdoor advertising signs are unique. All signs, other than outdoor advertising signs, promote some interest related to the property where the sign is located. Outdoor advertising signs, on the other hand, are signs which generally promote some interest being offering at a location other than the premises where the sign is located.
Consequently, it is clear that the table is an attempt to summarize requirements concerning signs other than outdoor advertising signs.
The logical and reasonable interpretation of the code as it applies to the present application is that the subject sign is a permitted sign and conforms to the size limitations 14' x 48' and otherwise conforms.
In ruling on a site plan application, the commission acts in an administrative capacity. The agency has no independent discretion beyond determining whether the site plan complies with CT Page 11685 the applicable regulations. Allied Plywood Inc. v. Planning andZoning Commission of South Windsor, 2 Conn. App. 506, 512,480 A.2d 584, 587 (1984), cert. denied 194 Conn. 808, 483 A.2d 612. If the application conforms to the regulations, the commission has no discretion and must approve it. Id.; Konisher v. Lawlor,177 Conn. 420, 427, 418 A.2d 66, 70 (1979).
The Planning Zoning Commission of the City of Middletown is hereby ordered to approve the site plan to approve the Application for building permit for the sign to be located on the property of Caffe Digandomennico.
The Commission misinterpreted and misapplied the provisions of the code.
The reason for the Commission denial of the site application are not valid and are without foundation.
The appeal is sustained.
JOHN WALSH, J.
Judgment to enter in accordance with foregoing Memorandum of Decision. Michael Kokoszka, Chief Clerk