[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Alecta Real Estate Greenwich, Inc. (Alecta)[1] appeals from a decision of the Planning and Zoning Board of Appeals of the Town of Greenwich (Board) upholding a decision by the local zoning enforcement officer (ZEO) which, in effect, found that Merrill Lynch, a prospective tenant of Alecta's building located at One East Putnam Avenue in Greenwich, was not a bank and therefore not eligible to occupy the ground floor premises at that location under the Town's zoning regulations.
 I — Jurisdiction
Alecta is the owner of land affected by the decision of the ZEO and the action of the Board. Therefore, it is an aggrieved person entitled to appeal, pursuant to General Statutes §§ 8-8 (a) (1), (b). Notice of the decision of the Board was published on April 24, 2000. [Return of Record, (ROR,) Item 6] and this appeal was served in a timely fashion on Mary 2, 2002. (Return of Service.) The court has jurisdiction to hear and determine the appeal.
 II — Factual Background
The Alecta property at One East Putnam Avenue which is the subject of the appeal is located in the Central Greenwich Business Retail Zone (CGBR). The uses of the ground floor of properties in the CGBR Zone are governed by Section 6-103.1 of the Greenwich Building Zone Regulations (ROR, Item 27) which limits such ground floor use to those listed in "Use Group 1". "Use Group 1" includes "Banks (not including drive-in banks)." Greenwich Building Zone Regulations § 6-100. Use Group 2 includes "all office space" which is allowed in the CGBR Zone, but not on the ground floor. Id.
Alecta sought approval of a proposed lease of the ground floor of its property to Merrill Lynch by requesting that the Town of Greenwich ZEO CT Page 13017 confirm that Merrill Lynch was a "bank" pursuant to the zoning regulations. The ZEO responded on December 7, 1999 stating while Merrill Lynch provided "many of the same services of a bank" it was his opinion it was "not a bank." (Supplemental ROR, Item 2)
Alecta appealed the ZEO's decision to the Greenwich Planning and Zoning Board of Appeals contending that "Merrill Lynch is a `bank' for the purpose of the Greenwich Building Zone Regulations" and requesting the Board to reverse the ZEO's decision. (ROR, Item 1.) This appeal was heard by the Board on March 1, 2000 and continued for a second hearing on April 12, 2000. On April 13, 2000 the appeal was denied. Three members of the Board voted to grant the appeal, and two members voted against. (ROR, Item 10.) The vote of four members of the Board is required to sustain an appeal. General Statutes § 8-7. The Board did not state any reason for its decision. (ROR, Item 10.)
 III — Standard of Judicial Review
The Board's consideration of Alecta's appeal from the ZEO's decision was de novo. General Statutes § 8-7; Caserta v. Zoning Board ofAppeals, 226 Conn. 80, 88-91 (1993). On appeal, the Superior Court must review the record developed by the Board. Caserta v. Zoning Board ofAppeals supra, 226 Conn. 90-91. A zoning board of appeal is endowed with liberal discretion and its actions are subject to judicial review only to determine whether they are illegal, unreasonable or arbitrary. Franciniv. Zoning Board of Appeals, 228 Conn. 785, 791 (1994). A court is not to substitute its own judgment for that of the administrative board, and a board's decision should not be disturbed as long as an honest judgment has been reasonably and fairly made after a full hearing. Wing v. ZoningBoard of Appeals, 61 Conn. App. 639. 643 (2001). A court's function in this context is to ascertain whether there is substantial evidence to support the board's conclusion. Conetta v. Zoning Board of Appeals,42 Conn. App. 133, 138 (1986). The burden of proving the Board acted improperly is on the party seeking to overturn the Board's action.Francini v. Zoning Board of Appeals, supra, 228 Conn. 791.
 IV — The Evidence in the Record
Alecta contends its prospective tenant, Merrill Lynch, provides an extensive list of banking services and that the panoply of retail banking activities proposed by Merrill Lynch for the ground floor of the Alecta building is clearly a banking use and indistinguishable from other financial institutions which do, or are qualified to, occupy the ground floor of other buildings in the CGBR Zone. Alecta provided to the Board certain brochures which describe the services and functions of Merrill CT Page 13018 Lynch and these indeed indicate a number of bank-like activities such as accepting and paying out deposits, making checking accounts and credit cards available, honoring and processing drafts, providing monthly statements, paying interest and making loans. (ROR, Items 21, 23, 24, 26a-26d.)
Alecta also presented evidence and argued that numerous judicial decisions have held that Merrill Lynch is a bank or is analogous to a bank under certain statutes. (Supp. ROR, Item 1.) The cases cited come from such widely diverse jurisdictions as Louisiana, Oregon and New York. A Connecticut case was also brought to the Board's attention:Halsey v. Merrill Lynch, Pierce Fenner Smith, Inc., judicial district of New Haven at New Haven, CV 90 0307979 (January 31, 1994, Vertefeuille, J.) which held that Merrill Lynch is a "bank" within the meaning of General Statutes § 42-a-1-201 (the Uniform Commercial Code as enacted in Connecticut).
Alecta offered evidence that the traditional role of a bank has changed in recent years, and recent federal legislation (the Gramm-Leach-Blifey Act, P.L. 106-102, Nov. 12, 1999, 113 Stat. 1338) has blurred, if not obliterated, the historic differences between securities firms and brokerage houses on the one hand and banks on the other. [ROR, Item 7 (transcript of March 1, 2001 hearing, hereafter referred to as "Tr. 1") pages 10-18.]
Finally, Alecta presented an opinion letter from Robert Fuller, a former judge of the Connecticut Superior Court and author of a volume in the Connecticut Practice Series, Land Use Law and Practice. Attorney Fuller's letter stated
. . . the terms "bank" and "banking" cover a wide variety of activities and have a broad meaning. In addition, the use of the word in the limited context of state banking statutes is not necessarily the same as the broader use of those words in other regulations, statutes and ordinances, including zoning regulations. Where the words in a zoning ordinance are not defined, they are construed according to the commonly approved use of the language. Planning and Zoning Commission of Town of Lebanon v. Gilbert, 208 Conn. 696, 705 (1988); Fisher v. Board of Zoning Appeals, 143 Conn. 358, 361 (1956). Since zoning regulations are in derogation of common law property rights, they are strictly construed against the town, and should not be interpreted to include or exclude by CT Page 13019 implication what is not clearly within their express terms. Fisher v. Board of Zoning Appeals, supra at 363; Service Realty Corporation v. Planning and Zoning Board of Appeals of Greenwich, 141 Conn. 632, 638
(1954) (limitation on outside storage of automobiles did not allow the board to limit parking); JM Realty Co. v. Board of Zoning Appeals, 161 Conn. 229, 233
(1971) (processing of compressed automobile frames not excluded as within definition of motor vehicle junk yard). Accordingly, since the operation of the business here is fairly within the usual board definition of a "bank" and bank operations, in my opinion it would be a permitted use.
(ROR, Item 14.)
James Maloney, the ZEO, presented evidence in support of his determination. It was pointed out that Merrill Lynch was not chartered as a bank by the State of Connecticut or the United States, but was registered in this state as a securities firm, presumably under Chapter 672a of the General Statutes, the Connecticut Uniform Securities Act. (Tr. 1, 27-29.) The recent federal legislation known as the Gramm-Leach-Blifey Act allowed the creation of financial holding companies which, under their umbrella could own both banks and securities brokerage firms. (Tr., 16-17.) Merrill Lynch owns two banks; however, neither of those banks is to be the proposed tenant in the Alecta building. (Tr. 1, 43)
At the end of the March 1, 2000 hearing it was suggested that the Board's deliberations would be assisted if a floor plan of the proposed Merrill Lynch leasehold was provided (Tr. 1, 67-68.) Such a plan was offered at the April 12, 2000 hearing. (ROR Item 17.)
 V — DISCUSSION
The issue confronting the court is whether the record before the Board contains substantial evidence to support the Board's action to deny Alecta's appeal. Conetta v. Zoning Board of Appeals, supra42 Conn. App. 133. Substantial evidence has been defined as
something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . The reviewing court CT Page 13020 must make into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . .
Samperi v. Inland Wetlands Agency, 226 Conn. 579, 588 (1993).
In advocating their respective positions, each side in this appeal has posited the issue in a different fashion. Alecta has stated that the issue is not whether Merrill Lynch is a "bank" pursuant to the state statutes, but whether it is a "bank" under the Greenwich Zoning Regulations. [See, e.g. ROR, Item 9 (transcript of April 12, 2001 hearing, hereinafter referred to as "Tr. 2") pages 33-34.] On the other hand, the ZEO and ultimately the Board, present the issue as being whether the proposed tenant space on the ground floor of the Alecta building is a "bank" or "office space". (Tr. 1, 33-34.) Both approaches have merit.
As noted above, Merrill Lynch proposes to offer substantial services which are similar, or identical, to the services of a bank. Attorney Fuller's letter points out that the term "bank" is not defined in the Greenwich Zoning Regulations and therefore should be construed broadly against the Town. While all parties agree that there is no definition of "bank" in the zoning regulations, there is a fairly precise definition of "office uses" which is included in Use Group 2 and therefore prohibited from being on the ground floor in the CGBR zone pursuant to Section 6-103. 1 (B). "Office uses" are defined in Section 6-5 (a) 38.2 as meaning:
 non-retail, non-personal service establishments which involve the transaction or provision of financial, professional or business services, the operation of service organizations, or the offices of Health-Care providers. Office uses include, but are not limited to advertising agencies; public relations firms; offices of professional persons; financial and tax services; mortgage and money-lending institutions (other than banks); investment companies; business consultants; credit agencies; secretarial services and the like. Office uses are characterized by having limited storage consisting of office supplies or the like, but not stock for resale.
In determining whether a zoning regulation applies to a certain situation, the Board has liberal discretion. The duty of the court in reviewing the Board's action is to determine whether the Board correctly CT Page 13021 interpreted the regulation and applied it with reasonable discretion. The court may not substitute its own discretion. Toffolon v. Zoning Board ofAppeals of Town of Plainfield, 155 Conn. 558, 560-61 (1967). The proper application of the regulations in this case involves a mixture of law and fact. This court concludes that the Board's action was not arbitrary, unreasonable or illegal. Conceding the similarities between the services and products offered by Merrill Lynch and a bank, the fact is that Merrill Lynch, the proposed lessee of the Alecta property, is a broad based financial services company and is not a bank. While Merrill Lynch owns two banks (Tr. 1, 43) neither bank is the proposed lessee and neither will offer its services at the location.
There was substantial evidence in the record from which the Board could also conclude that the proposed premises to be leased by Merrill Lynch fell into the category of "office uses". The floor plan introduced into the record (ROR, Item 17 shows six and perhaps seven private and enclosed offices, a conference room, and two spaces designated "teller — cashier". Clearly these premises have limited storage space and are not designed to store products for resale.
Looking at the matter through the prism suggested by the plaintiff, that is defining a "bank for the purpose of the CGBR Zone, the Board had evidence that the proposed Merrill Lynch use did not easily or obviously fall within that meaning. The zoning regulations explicitly state that
 [t]he emphasis of the CBBR zone is upon protection of ground floor space for compatible retail uses, and avoidance of a break in storefront continuity, consequently, business in the zone are generally dependent upon pedestrian traffic and storefront exposure.
[ (ROR, Item 27 § 6-103.1 (B).] This goal was clearly spelled out by ZEO Maloney in the hearings. His statement capsulizes the rationale for distinguishing between Merrill Lynch and a bank and why the Board's action is consistent with purposes of the Greenwich Zoning Regulations.
I don't think that if any of you walked into Merrill Lynch's space or any of the other brokerage firms that exist here in town you'd say, I'm in a bank. I just don't think that's going to happen. And I don't think that if you walk into People's Bank or Fleet Bank while they have these services . . . — many of the same services under the auspices of some other company within their overall financial holding CT Page 13022 company, or that does offer the brokerage services and financial advice and services, I don't think you would feel that you walked into an office. I think a bank is fairly clearly drawn in most people's minds as to what it means, particularly when you take into account we're talking about storefront, we're talking about pedestrian traffic, talking about retail uses as the things to be protected by this particular zone, and certainly, allowing them to be there as an office on an upper level and in any of the buildings in the zone. And I think that is your zoning issue.
(Tr. 2, 56-57)
Based on the foregoing, the court finds that there was substantial evidence in the record to support a conclusion that Merrill Lynch was not a bank and that its proposed business space was not consistent with what the zoning regulations called for on the ground floor of properties in the CGBR Zone. The court concludes that the Board applied the zoning regulations to the facts in this case in a reasonable and lawful manner.
Alecta also contends that the actions of the Board are in violation of the equal protection guarantees of the United States Constitution. It is argued that there are several other banks or financial institutions operating on the ground floor of nearby properties and the refusal to allow Merrill Lynch the same opportunity is in contravention of theFourteenth Amendment.
The factual record is quite inadequate to support Alecta's arguments. The actual zoning status of some of the other offices and institutions is unclear. The locations in Pickwick Plaza, for instance, appear to be the result of, or subject to, a settlement of prior litigation, and at another location, the occupant may have substantially reconfigured his space since initial zoning approval. (Tr. 2, 41-42, 50-51.). The lack of established facts are not materially alleviated by the brochures of Fleet Bank and the photographs of the exteriors of the Chase, U.S. Trust and other offices. (ROR, Items 26g-m; 18.) Moreover, there is evidence that other securities firms had been denied access to ground floor locations in the CGBR Zone in recent years. (Tr. 2, 52.)
Furthermore, even assuming some factual predicate existed to find that Alecta had been selectively treated, the Connecticut Supreme Court has stated that where the treatment is not based on an impermissible consideration such as race or religion or an intention to punish for exercising constitutional rights, there must be demonstrated that the CT Page 13023 defendant maliciously singled out the plaintiff with an intent to injure. Thomas v. West Haven, 249 Conn. 385, 393 (1999) cert. denied528 U.S. 1187 (2000) (citing Crowley v. Courville, 76 F.3d 47 (2d cir. 1996). There is certainly no evidence in the record of intent to injure or malicious action.
 CONCLUSION
For the foregoing reasons stated above, the appeal is dismissed.
 ___________________ ADAMS, J.