[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The above-captioned action concerns the authority of an association of owners of property surrounding Beaver Dam Lake in Stratford to regulate development of the land of other such property owners. The plaintiff, Gil Gilbert, alleges in his fourth amended complaint that the defendant Beaver Dam Association, Inc. ("Association") has slandered title to his 7.8-acre lake front property by filing various documents on the land records of the Town of Stratford. He further seeks an injunction against the Association from asserting that subdivision and development of his property is subject to its review and regulation. He seeks a declaratory judgment to the same effect.
Procedural history
Soon after the plaintiff commenced his action, he sought a preliminary injunction against the Association. The court, Melville, J., denied his application on the ground that the relief sought affected the rights of other landowners who had not been provided with notice of the maintenance of the action. The plaintiff amended his complaint and included as defendants others who owned property around Beaver Dam Lake. The case was transferred to the complex litigation docket for management and trial. In a ruling issued on August 19, 2002, this court granted the plaintiffs motion for partial summary judgment, finding unenforceable on grounds of failure to satisfy the Statute of Frauds a regulation that purported to give the Association and its various members a right of first refusal in the event that an owner of property around the lake contracted to sell it.
The plaintiff has complied with Judge Melville's order to serve and name as defendants all other property owners whose interests will be affected by this adjudication.
Claims and defenses
CT Page 15306
In the first count of his fourth amended complaint, the plaintiff alleges that his property is not subject to regulation by the Association by the terms of his deed and that he is not a member of the Association and is therefore not subject to the Association's regulations on the basis of membership. In this count, he seeks a declaratory judgment declaring that the Association's by-laws and regulations do not apply to his property and an injunction prohibiting the Association from asserting that they do. He also seeks an order requiring the Association to release any claim on the land records concerning its asserted right to regulate the property any lien for unpaid Association dues.
In the second count, the plaintiff asserts that the present rules and regulations of the Association were not enacted in conformity with its by-laws and are therefore ineffective. He alleges that the Association created a cloud on his title to his property by filing a lien on the land records for nonpayment of Association dues and by recording its rules and regulations and amendments to its by-laws as encumbrances on the land records. He alleges that the Association slandered his title to his property. He seeks money damages, punitive damages and attorneys' fees and the same injunctive relief he requests as to the first count. The plaintiff seeks no damages from any defendant except the Association.
In the third count, the plaintiff seeks a judgment quieting title to the property free and clear of any claims by the defendants. He also seeks money damages from the Association and the same injunctive relief he requests as to the first count.
The defendants filed special defenses on October 10, 2002. As their first special defense, they allege that the Association's authority to regulate use of the plaintiffs property was one of the restrictions in the deed by which the plaintiff purchased his property.
As a second special defense, the defendants allege that the plaintiff acknowledged the authority of the Association by seeking its approval of a proposed subdivision of his property and that the Association never denied approval.
As a third special defense, the defendants assert that the plaintiff took title with actual and constructive notice of the existence of the Association and its right to subject his property to regulation.
As a fourth special defense, the defendants allege that the plaintiff and his wife participated in the activities of the Association and engaged in activities restricted to Association members and that the CT Page 15307 plaintiff did not announce that he was not a member until instituting this suit.
As a fifth special defense, the defendants assert that the plaintiff failed to make reasonable inquiry that would have disclosed to him the regulations and "private law" to which the property was subject, including the existence of the Association, its by-laws and regulations, and its ability to enact additional regulations that affected his property.
Findings of fact
Beaver Dam Lake is a 58-acre lake in Stratford. In the 193 Ots, the lake and the surrounding area, which forms the watershed of the lake, were owned by The Loch Lenidow Realty Company. That entity sold off some lots around the lake and in 1944 it deeded to The Beaver Dam Association of Stratford, Inc. the property on which an earthen dam was located and the lake and lake bed below the dam. In this deed, (Ex.22) the grantor reserved the right to permit six docks at specified locations on the lake from lots still owned by The Loch Lenidow Realty Company and obligated itself to include in the deeds of its remaining lots provisions that would prevent access by the public and reserve use of the lake to the members of the association. It further obligated itself to sell remaining lots "subject . . . to all reasonable rules and regulations now in effect or such as may be generally imposed from time to time upon all the owners having the use of Beaver Dam Lake, by The Beaver Dam Association of Stratford, Incorporated, its successors or assigns." (Ex. 22) This deed stated that the conveyance of the lake and dam to the association were subject to" (g) rants to the use of the waters of Beaver Dam lake contained in deeds of conveyance . . ." set forth in various conveyances of lots.
One of the conveyances contained in this list was the conveyance in 1933 of two tracts to Jesse E. Langsdorf. That property, which was eventually purchased by the plaintiff, passed to Martha K. Langsdorf, who sold it, with a house and outbuildings, to Frances L. Greenebaum in May 1972. Mrs. Greenebaum conveyed the property to herself and her husband, Henry Greenebaum. (Ex. 3) Together, the Greenebaums conveyed the property, which was known as 3260 Huntington Road to Gil Gilbert and Ruth Gilbert on April 21, 1999. (Ex. C).
The deed by which the Greenebaums conveyed the property to the Gilberts in 1999 stated that the conveyance was subject to a number of conditions and restrictions including "3. Covenants, agreements, rights, reservations and conditions as set forth in deeds to Jesse E Langsdorf CT Page 15308 dated July 10, 1933, and recorded in Volume 148 at Page 308 and dated February 13, 1934, and recorded in Volume 150 at page 91, all of the said Stratford Land Records."
The first deed referred to in this provision of the Gilberts' deed provided that the grantee could not:
 use the lake . . . as a landing field for airplanes or other air flight machines or use motor boats on said lake; or erect or cause or procure, permit or suffer to be erected upon said premises or any part thereof any building within 75 feet of said lake other than boat houses, which may only be erected after the approval thereof shall have been obtained from the grantor or any association which may be organized consisting of owners of property purchases from the grantor; or erect or cause or procure, permit or suffer to be erected upon said premises or any part thereof any building other than for a private dwelling or a barn or garage for private use only, provided, however, that such bam or garage may only be erected at such place as may be approved by the grantor or any association which may be organized consisting of owners of property purchased from the grantor; or dispose of sewerage in such manner as to pollute said lake or any streams tributary thereto; or use said premises for any dangerous, noxious or offensive purpose or establishment whatsoever; or keep on said premises any animals other than horses without the special permission of the grantor or any association which may be organized consisting of owners of property purchased from the grantor; and that said premises shall be subject to such other reasonable restrictions or limitations as the grantor or any such association may impose thereon.
(Ex. G). (Emphasis supplied.).
The second deed whose restrictions to title were incorporated in the deed that the Greenebaums conveyed to the Gilberts includes the same provision that has been set forth above, along with other restrictions.
These deed restrictions clearly provide that the grantee took the property in question with restrictions and limitations on developing it. The provisions explicitly limit the location, type and use of buildings to those uses that would be approved by "any association which may be organized consisting of owners of property purchased from the grantor." The deed restrictions also provide that the property would be subject not only to the specific limitations stated, but also to "such other reasonable restrictions or limitation as the grantor or any such association may impose thereon." CT Page 15309
The plaintiff does not contest that the defendant Association is the association described in Exhibits G and H. The Beaver Dam Association of Stratford, Inc. adopted Articles of Association in June 1944. That document lists as purposes of the corporation, among other things, "to promote the use and enjoyment of (Beaver Dam Lake) and of the properties adjacent thereto and for the mutual benefit, welfare and protection of its members and of said properties," and "to purchase and to own real property including the land underneath the waters of said lake together with the dam and spillway connected therewith; to regulate the use of thewaters of said lake and properties adjacent thereto; . . . and to levy assessments which may include provision for a sinking fund for the purposes herein stated." (Emphasis supplied.)
Other deeds issued by Loch Lenidow for lots abutting Beaver Dam Lake likewise convey subject to regulation by an association "which may be organized consisting of owners of property purchased from the grantor." (Ex. 1, 51).
Over the years of its existence, the Association has been vigilant in protecting the enclave of lakeside properties and the water quality and tranquillity of the lake that made those properties attractive to their owners. The area beyond the original Loch Lenidow holdings has been subjected to intense development, including Route 8, a hotel, and a housing development. The Association, realizing that such development increased runoff of pollutants and posed other dangers to the lake, monitored such development plans and, on occasion, opposed or sought changes in such plans before the planing and zoning board and inland wetlands board of the towns in which the lake's watershed was located. The Association also undertakes maintenance of the earthen dam and hires an engineer to inspect it regularly. The Association monitors the quality of the lake water, lest the lake become choked with algae or vegetation because of the runoff of fertilizer or other pollutants.
In 1991, the members of The Beaver Dam Association of Stratford, Inc. enacted by-laws that provided for a board of managers to ""manage and control the affairs and business of the Association." (Ex. D). The by-laws provided that the board of managers could approve actions by a majority of those present, provided that majority consisted of at least three votes; however the bylaws required that any act of that board "with respect to the acquisition or disposal of the property of the Association; or any change in the restrictions, rights, privileges or interest of members of the Association shall be subject to ratification by a vote of three-fourths of the members." The by-laws provided that any owner of land abutting the lake was eligible for membership and they did not make membership mandatory but recognized that owners might decline to CT Page 15310 be members or might withdraw from membership, despite the provisions in their deeds that subjected their property to regulation by the Association. (Ex. D, Article I.)
The 1991 by-laws provide that only members of the Association who are in good standing with regard to payment of dues are entitled to use the lake for boating, swimming and fishing The Association uses dues, which were $800 per year in 1999 and $1000 per year in 2002, to hire an engineer to inspect the dam each year, to maintain the dam so that the lake continues to exist, to monitor the water quality and determine the presence of bacteria that would make it unsafe for swimming and fishing, and to remedy pollution and its effects on the lake.
The 1991 by-laws were signed by the then-owners of properties surrounding the lake, including Henry Greenebaum and Frances Greenebaum, from whom the plaintiff acquired his property.
In 1991, the grant from Loch Lenidow to the Association was entered into the land records of Stratford, and the by-laws were entered in those records, indexed under the Association's name both as grantor and grantee.
Henry Greenebaum, who was deceased at the time of trial, was deeply involved in the Association's effort to preserve the quality of the lake and the environment around it. He provided the Association's president, Dr. Jay Esposito, with a steady stream of newspaper clippings and messages noting dangers to lakes from development in their watersheds, including the danger that the state Department of Environmental Protection might require onerous and expensive procedures, such as draining the lake, if the Association failed to be vigorous in its protection of water quality. In 1991, Mr. Greenebaum wrote a history of the lake and the Association that concluded with the statement "[i]t is advisable that no new construction adjacent to the lake be started without regard to the By-laws and Lake Association Rules.
In late March or early April 1999, in negotiations conducted without an attorney, the plaintiff entered into a contract to buy the Greenebaums' 7.8-acre property. Though the plaintiff did not enter this contract into evidence, he testified that the purchase was subject to the results of percolation tests and deep test holes to determine whether the property could be developed by subdividing and building additional residences. Though the plaintiff asserted that he did not learn that there was an association that regulated use and development of all the lakefront properties, the court does not find this testimony credible in light of Henry Greenebaum's long history of commitment to the Association's CT Page 15311 efforts to regulate development around the lake. It seems most unlikely that Greenebaum failed to mention such regulation to the plaintiff.
Since the Greenebaums were Association members in 1999, the Association continued to put notices about its meetings in the mailbox for the property, and the plaintiff discovered a notice for an Association meeting in his mailbox after he closed on the property on May 7, 1999.
Apparently wary of the plaintiffs development plans, the board of managers for the Association met on May 10, 1999, to discuss, among other things, the need to enact an explicit provision that all plans for subdivision, construction or development of the properties around the lake be submitted to the Association for approval by three-quarters of the Association's members. The board noted in its minutes (Ex. K) that landowners had in the past submitted such plans to the Association on the basis of an understanding that their deeds required such submission and approval. Six of the seven members of the board of managers voted in favor of the provision. Pursuant to the requirements of its by-laws, which require that amendments receive a three-fourths majority of the total number of votes cast at any special meeting (Ex. D, Article VI, the Association held a special meeting of the members on June 11, 1999, and presented the proposed new amendments to the bylaws for ratification. No evidence was presented concerning the number of Association members who cast votes at the June 11, 1999 meeting on June 11, 1999 or thereafter. of the twenty-four properties listed on the proposed amendment, nineteen signed.
Approximately two weeks after the May 7, 1999 Greenebaum-Gilbert closing, John Tierney, an Association member, called the plaintiff and asked what his plans were for developing the property. The court infers that the digging of test holes had come to the attention of other lakefront residents and that they had learned that the plaintiff earned his living as a builder of houses. At Tierney's suggestion, the plaintiff supplied Dr. Esposito, who was the Association's president in 1999, with a plot plan. That plot plan showed only the existing lot lines and a single division. Esposito called a meeting of the Board of Managers to review the proposal (Ex. 31) and the meeting was held on June 22, 1999. The plaintiff attended and explained that he wanted to build two or perhaps three houses on the property, which at that time contained only a single house in which he and his wife were residing. The members of the board of managers asked the plaintiff to provide them with a plan showing all the proposed subdivisions of the property, with lot lines and the locations of proposed houses and other structures.
The plaintiff agreed to return with detailed plans but never complied CT Page 15312 with that request. He and his wife attended the Association's annual picnic in early July and the annual membership meeting of the Association about a week later. The plaintiffs wife volunteered to serve on one of the Association's committees. The Association appointed her, apparently unaware that she had quitclaimed her interest in the property to the plaintiff the same day that she acquired it and was no longer an owner.
Because the plaintiff had attended its picnic and annual meeting and had asked for a special meeting of the board of managers, the Association assumed that he had opted to be a member. The Greenebaums had paid dues for the year ending at the end of June 1999, and the Association issued the plaintiff a bill for dues for the year beginning July 1. He did not pay that bill but continued to use the lake for fishing. In March 2000 he contributed $150. to the Association's collection to buy fish to stock the lake He never advised the Association that he did not consider himself a member or that he was withdrawing from membership. On May 17, 2000, he served the Association with a verified complaint and application for an injunction. In his pleadings, he asserted that he was not a member of the Association and took the position that because he was not a member he was not subject to the Association's by-laws and regulations.
The Association filed a lien against the plaintiffs property for the dues for the 1999-2000 year. The Association did not seek to recover dues from the plaintiff for any year other than 1999. The Association had begun using such liens to collect unpaid dues in February 1999.
The Association also filed on the land records of each owner of property abutting Beaver Lake, including the plaintiffs, the by-laws that the Town Clerk had indexed under the Association's name in 1991. (Ex. Z) Additionally, it filed on the land records the amendment to the by-laws bearing the signatures of six of the seven members of the board of managers (Ex. E), and the amendments to the by-laws voted upon at the Association meeting on June 11, 1999. (Ex. F). The plaintiff did not authorize the recording of any of these documents.
The amended by-law provides, at Article VI, Sec. 4, that "[n]o property abutting on the water of Beaver Dam Lake, whether now owned by a non-member of the Association or formerly owned by any member of the Association, shall be subdivided, built upon or otherwise developed without the prior consent of a three-quarter (3/4) a (sic) majority vote of the members of the Association."
During the pendency of this action, on a date not identified, the plaintiff built a four-car garage on his property without submitting plans to the Association for its review. The Association took no action with CT Page 15313 regard to that development of the plaintiffs property. The Association has not prohibited the plaintiff in any way from developing his property, and the plaintiff has not submitted to the Association any proposals to develop it. He put the property on the market for sale with an asking price of $900,000 in the spring of 2001 while this case was pending but took it off the market in November 2001. At the time of trial, he continued to reside on the property. Another multi-acre lakefront property was purchased for over $1 million during the pendency of this suit by a buyer who testified that he has no intention to subdivide the property, even though both the Association and the town of Stratford here approved the prior owner's plan to divide it into two parcels.
The court will make further findings in the course of discussing the merits of the plaintiffs claims below.
Is the plaintiffs property subject to regulation by the Association?
All of the plaintiffs claims hinge on the same legal issue: whether his property is subject to regulation by the Association. He contends that the provisions of the by-laws that require him to submit development plans to the Association for a vote are void and unenforceable because:
a) the text of the by-laws was not recorded in his chain of title;
 b) the requirement is beyond the scope of the regulatory authority granted to the Association in its own deed and in deeds to plaintiffs predecessors in title;
 c) the by-laws may not be enforced against property owners who are not Association members;
 d) the requirement to submit development plans to the Association is not reasonable and a germane to the Association's stated corporate;
 e) the May 10, 1999 amendments were not regularly enacted in accordance with the Association's by-laws concerning the adoption of such provisions; and
 f) the restrictions do not conform to the requirements of the Common Interest Ownership Act, Conn. Gen. Stat. § 47-200 et seq.
a. Notice of limitation on title
The deed by which the plaintiff acquired his property on May 7, 1999, CT Page 15314 clearly states that the plaintiffs title is subject to the limitations, reservations and conditions set forth in the two deeds that are exhibits G and H. Those provisions, which are incorporated by reference in the plaintiffs deed and are clearly within his chain of title, provide that the plaintiffs right to use Beaver Dam Lake and his title to the property in general are limited in certain specific respects (no use of motor boats, no landing air planes on the lake, no disposal of sewerage in ways that pollute the lake or feeder streams). The limitations and conditions further state that "said premises shall be subject to such other reasonable restrictions or limitations" as the Association empowered by Loch Lenidow "may impose thereon." (Ex. 6).
The other deed to which the plaintiffs deed makes clear reference, Ex. H., similarly enumerates specific limitations on the type and location of buildings and the uses to be made of the property, and likewise includes a general limitation that the premises are subject to such other reasonable restrictions or limitation as the association of property owners may impose.
The plaintiff argues that these clear restrictions on his title and his right to use the lake are of no effect because they do not actually set forth the regulations enacted by the Association over the years. The plaintiff asserts that if a title searcher does not find the text of the regulations in the chain of title, then the property is not subject to them. The plaintiff has cited no authority in support of this proposition, but has merely cited cases in which the issue was the adequacy of a title search or the effect of restrictions that are not stated at all in a deed.
The appellate courts of Connecticut have, on the contrary, ruled that a general development scheme, where the owner divides the land into lots to be sold by deeds containing substantially uniform restrictions, creates enforceable restrictions on each grantee and his or her successors in title. Pulver v. Mascolo. 155 Conn. 644, 650 (1967); Hooker v.Alexander, 129 Conn. 433, 436 (1942); Marion Road Assn. v. Harlow,1 Conn. App. 329 333 (1984).
The appellate courts have ruled that limitations on a grantee's ownership rights) such as easements, must be applied by giving effect to intention expressed by the words of the written instrument construed in the light of surrounding circumstances. Bird Park Road Ass'n v. BirdPark Corp. , 62 Conn. App. 551, 557, cert. denied, 256 Conn. 917 (2001);Eis v. Beyer, 17 Conn. App. 664-68, affd, 213 Conn. 29 (1989). "The construction and legal effect of the express terms will not be varied by reason of inconvenience to the parties or unreasonableness of the terms." CT Page 15315Hatcho Corporation v. Della Pietra, 195 Conn. 18, 21 (1985); Moore v.Serafin, 163 Conn. 1, 10 (1972); Eis v. Beyer, supra, 17 Conn. App. 668-69. Every part of the language of a deed is to be given effect. Hare v.McClellan, 234 Conn. 581, 594 (1998); Peckheiser v. Tarone, 186 Conn. 53,59 (1982).
The words set forth in the Loch Lenidow deeds to the plaintiffs predecessors in interest clearly express the purpose and intent to preserve the environment of the lake for all of the buyers of its lots by precluding any of its grantees or their successors from building directly at the shoreline, from blocking each other's views and access to the lake by the locations they chose for outbuildings, and from locating their improvements in a manner likely to pollute the lake or to impair the ability of other grantees to enjoy the quiet and the natural aspects of the lake. In addition to enumerating particular prohibitions, Loch Lenidow granted the Association the right to enact further restrictions to achieve the same general purpose of protection of the lake and its environs from development that intruded on the collective enjoyment of the lake and of the condition of the lake by enacting further regulations in the future and by providing that the properties sold by Loch Lenidow would be subject to those new regulations.
The plaintiff has argued as though the deed restriction contained only the references to the location of boat houses and the regulation of siting of barns and garages. His observations fail to recognize that the explicit restrictions in his deed are not limited to those terms but plainly include the additional general limitation that "said premises shall be subject to such other reasonable restrictions or limitations as the grantor or any such association may impose thereon." The plaintiff has cited Saphir v. Neustadt, 177 Conn. 191, 204 (1979) for the general proposition that restrictive covenants are to be narrowly construed and are not to be extended by implication. This observation has no bearing on the actual issue before this court because the Association is not seeking to extend the restrictive covenant but only to enforce it to the breadth of the words of the restriction itself. which makes ownership of property on Beaver Dam Lake, including the plaintiffs property, subject not only to the restrictions explicitly set forth, but also to "such other reasonable restrictions or limitations as . . . any such association may impose thereon." The restriction on plaintiffs land explicitly makes ownership rights subject to not only the reasonable restrictions or limitations in effect at the time of purchase, but also to those that the lake association might enact in the future.
Clearly, Loch Lenidow's scheme for preserving the qualities of the land around Beaver Dam Lake was unusual. It put all of the landowners in the CT Page 15316 situation of having their rights to use their property limited by the reasonable enactments of a lake association. Landowners who chose not to belong to the association and not to participate in its enactment of restrictions or limitations would nevertheless be bound by those restrictions and limitations, subject only to the requirement that the regulations be "reasonable . . ." Alternatively, landowners could be active in the Association and seek to effect the degree of restriction or limitation by participation in the Association's rule-making processes.
Though no party has cited the Marketable Record Title Act, that Act, at Conn. Gen. Stat. § 47-33d, makes marketable record title subject to just such explicit restrictions as are stated in the deed that Gilbert took from Greenebaum. The plain language of his deed and the covenants referenced therein put the plaintiff on notice that his ownership would be subject to whatever reasonable restrictions or limitations had been imposed or would in future be imposed by a lake association.
b. Reasonableness of Association's restrictions
The plaintiff asserts that the Association's restrictions are not reasonable and therefore do not apply, since his title is subject only to "other reasonable restrictions and limitations as . . . such association may impose thereon." (Emphasis supplied.) The only restriction that the Association has actually imposed on the plaintiffs property is a requirement to submit to the Association for a vote any plans for subdividing, building on, or developing the property. The Association has not refused to permit him to develop his property, and, indeed, he has built a four-car garage on it with no interference by the Association. The evidence established that the Association has never acted to deny a property owner the right to subdivide his or her land, though it has expressed its views to Stratford town officials and land use bodies when developments around the lake or affecting the water quality of the lake have been proposed.
The plaintiff correctly observes, however, that the Association has taken the position that it is entitled to regulate his development in his property and that this assertion of rights encumbers his property rights so that its validity should be determined by this court. The plaintiff asserts that even if the provisions in his deed make his property subject to the Association's "reasonable restrictions or limitations," the restrictions that the Association seeks to impose are not applicable because they are not reasonable.
The plaintiff argues that the Association's rules and regulations and amended by-laws are not reasonable because they regulate subdivision of CT Page 15317 lakefront properties and the siting of buildings and structures on properties, and that such regulation extends into areas that go beyond the kinds of regulation specifically set forth in the deed restrictions, such as setbacks for boat houses, siting of outbuildings, and limitations on the kinds of animals that may be kept on the properties that are subject to the deed restrictions. In fact, the Association's new by-laws and regulations are similar to the enumerated restrictions and serve the same purpose: to safeguard against uses that will impair the lake, the atmosphere of open space around the lake, and the quiet enjoyment of other landowners of the beauty and quiet of this unusual location.
As the Association rightly observes, the issue of reasonableness in this case is to be determined by reference to the language of the deed restrictions and the purposes they were meant to serve. The situation is different from those presented in Sterner v. Saugatuck Harbor Yacht Club,Inc., 188 Conn. 531 (1982) and DeBernardo v. Pinewood Lake Association.Inc., Docket No. X01CV 93-0149841, (Judicial District of Waterbury, March 11, 1999). Those cases concerned the reasonableness of regulations enacted by voluntary associations governing the personal conduct of members, not the validity of regulations under a deed restriction that made use of property subject to an Association's regulations. Reasonableness in this case must therefore be assessed in view of the deed language and its intent and purpose, not in view of the Association's own governance, the issue regulated by Conn. Gen. Stat. § 33-1056 (a).
The requirement at issue is designed to ensure that the unique quality and features of the lake and its environs will not be impaired by the actions of single landowner. Witnesses called by the
Association testified persuasively about their efforts to protect the lake and the dam and the hazards that runoff from paved surfaces, elimination of ground cover, and increase in the number of buildings and strain on septic systems pose to the lake. They testified convincingly about their efforts to prevent pollution that could cause the lake to be choked by algae or polluted from feces, fertilizer, petroleum products, and other residues in runoff.
The plaintiff notes that the Town of Stratford subjects development plans to review and argues that it is therefore not reasonable for the Association to impose its own standards of protection. The answer to this observation is that the lake property was uniquely developed and subjected by its original grantor to a system of additional regulation by deed restriction by those most interested in preserving the area, even to an extent that exceeded the general standards applicable to other CT Page 15318 properties in Stratford that were not based on mutual enjoyment of a lake.
The plaintiff has not demonstrated that the Association has ever voted to disallow a building, subdivision, or other development of lakefront property on the basis of considerations other than preserving the lake and the quiet enjoyment of its environs by all Association members. The court cannot assume, in the absence of any evidence, that the Association would deny any application by the plaintiff for reasons other than the reasons for which the Association was created, and the court finds credible the testimony of Association officers and members that the purpose of the regulation at issue is protection of the lake and the surrounding environment.
Even if the reasonableness of the Association's regulations and by-laws were to be assessed by reference to its corporate purpose, the regulations (apart from the right of first refusal that has already been ruled against on other grounds) do in fact comport with a legal purpose clearly stated in the Association's Articles of Association (Ex. I) which provides at Article II that one of the purposes of the Association is "2. To purchase and own real property including the land underneath the waters of (Beaver Dam Lake) together with the dam and spillway connected therewith, to regulate the use of the waters of said lake and the properties adjacent thereto to maintain the said dam and spillway; and to levy assessments which may include provision for a sinking fund for the purposes herein stated." (Emphasis supplied.) The by-law at issue unmistakably constitutes an exercise of the stated purpose of regulating the properties adjacent to the lake.
c. Regularity of enactment of the disputed by-law
The plaintiff makes the additional claim that the by-law at issue is invalid because it was not enacted in accordance with the Association's procedures for amending by-laws. He does not assert that he was denied any notices or rights that the by-laws guarantee to members in that he asserts that he was not a member of the Association at any time.
The plaintiff correctly observes that the Association's board of managers who voted to regulate development did not have authority to amend the by-laws, as the by-laws distinguish between "acts" that may be taken by that board and ratified by the members subsequently (Article II, Sec. 1) and actual amendments of the by-laws, which are governed by the procedures of Article VI Sec. 1.
Article VI Section 1 authorizes amendment "by a three-fourths majority CT Page 15319 of the total number of votes cast at any Semiannual meeting or at any special meeting called for this purpose, provided notice of such amendment shall have been contained in the call for such meeting." In order to prove that the amendment at issue was not enacted in accordance with this requirement, the plaintiff had the burden of proving the number of votes cast at the special meeting on June 11, 1999 and demonstrating that the votes in favor constituted fewer than three-fourths of the total votes cast at the meeting. He has failed to adduce such proof.
The plaintiff asserts that the by-law at issue was not regularly enacted for the further reason that notice of the proposed amendment was not included in any notice by which the special meeting was called. The president of the Association, Dr. Jay Esposito, testified that the meeting at which the by-laws were amended on June 11, 1999 was held at the home of Mike Pavia and that Mr. Pavia issued the notice for the meeting. Mr. Pavia was not called as a witness. The amendment, Ex. F., contains the statement that "The undersigned waive the general notice requirement of the By-laws and the specific notice requirement regarding amendments provided in Article VI of the By-laws." No testimony was adduced to establish whether there had in fact been a deviation from the notice requirements or whether this statement was a routine insertion to protect against any errors in notice. The court finds that the plaintiff failed to present evidence to establish, by a fair preponderance of the evidence, that no notice of the kind required by the by-laws preceded the special meeting at which the amendment at issue was passed.
Even if there had been an irregularity in the form of notice of the meeting, the defendant produced evidence that any such irregularity was waived. Though some properties that are eligible for membership in the Association have more than one landowner, the by-laws provide at Article I Secs. 1 and 3 that each property constitutes a single membership. Twenty-four addresses or memberships are listed on Ex. F, and nineteen of the twenty-four, or 79%, signed signifying waiver of any defects of notice. Some members whose signatures bear later dates and who were apparently not present at the meeting on June 11, 1999, also signed to indicate approval of the amendment. Since the by-laws required approval only by a percentage of those present at the meeting, this further approval by non-attending Association members was not probably necessary.
d. Is the amended by-law applicable to non-members?
The plaintiff asserts additionally that his property is not subject to the Association's by-laws because he has not chosen to be a member of the Association. The deed restrictions that this court have found apply to his property do not specify that the reasonable restrictions and CT Page 15320 limitations imposed by the lake Association apply on to those properties whose owners choose to be members. Instead, the plain language of the deed restriction makes the property subject to the Association's reasonable restrictions and limitations without regard to membership. This provision does not to be justified in order to be valid or enforceable, but a plain justification exists: the grantor's clear purpose of protecting the lake and its environs would not be served if property owners could escape those purposes merely by failing to join the Association.
The Association was deeded the dam and lake itself and the ability to regulate it and to enact reasonable restrictions on surrounding property. The plaintiff argues that his deed gives him the right to use the lake; he ignores the fact that the deed explicitly makes that right subject to the reasonable restrictions and limitations imposed by the lake Association, which bears the expense of maintaining the lake and protecting it.
The plaintiffs decision not to pay membership dues for his initial year of using the lake, and his decision not to be a member for subsequent years do not negate the restrictions in his deed.
Validity of lien for unpaid dues
In addition to his claim that the Association wrongfully recorded its by-laws in his chain of title, he asserts that the Association wrongfully recorded a lien in the amount of Association dues for the year 1999-2000. Article V, Sec. 5 of the Association's by-laws, as they existed from 1991 to the present, provides that "[all] unpaid dues and assessments shall be a lien on the real property, and collectable through legal process and with all costs of collection including legal fees being added to the debt. Liens may be filed on the land records for all unpaid dues, assessments costs and fees and the signing of these By-Laws shall constitute consent to the recording of such liens."
The court finds that the Plaintiff was a member of the Association for the dues period that commenced on July 1, 1999. He used the lake, which was the Association's property, he attended a social event sponsored by the Association and a meeting of the Association, and his wife sought and obtained membership on an Association committee. Though there was no formal procedure for becoming an Association member, the plaintiff knew from John Tierney that an Association existed and that the events he attended after meeting Mr. Tierney were Association events; and he acted in ways that signified his agreement to be a member for the 1999-2000 term. CT Page 15321
The plaintiff did not, however, agree to entry of a lien against his land, and the Association has identified no statute that authorized such liens. In general, a lien may be created by the owner's assent to a contract providing for such a lien or by operation of a statute authorizing a lien. Paton v. Robinson, 81 Conn. 547, 554 (1909). The sole authority the Association claims for the lien in the amount of the 1999-00 dues is the by-law cited above which provides for the filing of liens to collect dues. That by-law does not concern "reasonable restrictions and limitations" on the use of the plaintiffs land, but only a means of collecting a debt. Restrictive covenants are not to be extended by implication. Saphir v. Neustadt, 177 Conn. 191, 204 (1979). The restrictive language in the plaintiffs deed does not make his title subject to a power by the Association to impose such a lien, and the reference to the Association's by-laws does not make the property subject to any and all bylaws the Association may choose to enact but only to those that constitute "such other reasonable restrictions or limitations as . . . any such association impose thereon." "Thereon" is a reference to the "said premises," and is reasonably understood in its context to apply to restrictions on use of the premises, not regulations concerning the payment of dues or other matters not related to the use of the premises.
The Association takes the position that because the plaintiffs grantor, Henry Greenebaum, signed the by-law agreeing to allow a lien for unpaid Association dues, such a lien can be filed against the plaintiff. Since this by-law was not within the scope of the restrictive covenant, Greenebaum's agreement was personal to him and did not bind the plaintiff.
The lien is hereby declared to be null and void and the defendant is ordered to file a release of it on the land records. The court does not hereby hold that the plaintiff is not liable for the 1999-2000 dues, but only that those dues may not be collected by the procedures applicable to liens.
Slander of Title
The plaintiff claims that the defendant Association slandered his title to his property by filing the lien to recover Association dues for 1999-2000 and by recording its amended by-laws on the Stratford land records in his chain of title. "False communications which impugn the plaintiffs title to goods or to real property are usually denominated `slander of title.'" QSP, Inc. v. Aetna Casualty Surety Co.,256 Conn. 343, 359 n. 15 (2001). See Restatement of the Law Second Torts CT Page 15322 2d § 623A and 624 (1977). In order to be entitled to damages for slander of title, a plaintiff must prove not only that the defendant created a cloud on the plaintiffs title but that the defendant did so with malice. Wildwood Associates. Ltd. v. Esposito, 211 Conn. 36, 49-50
(1989). "A cause of action for slander of title consists of the uttering or publication of a false statement derogatory to the plaintiffs title, with malice, causing special damages as a result of diminished value of the plaintiffs property in the eyes of third parties." Elm StreetBuilders, Inc. v. Enterprise Park Condominium Association, Inc.,63 Conn. App. 657, 669 (2001).
The recordation of the Association's amended by-laws in the chain of title of the plaintiff does not constitute a slander of his title. As has been found above, the plaintiffs property is in fact subject to the reasonable restrictions and limitations enacted by the Association, and the recordation of those regulations merely supplements the reference to them in the plaintiffs deed and is neither false nor slanderous nor malicious.
The recordation of the lien for unpaid dues for the year in which the Association believed the plaintiff be a member is not authorized by any statute nor by the restrictions in the plaintiffs deed, and the Association therefore had no basis for recording the lien. The Association acted from a mistaken belief that it could enhance its ability to collect unpaid dues in this manner, but the plaintiff did not establish either that the claim that the Association acted with malice. The plaintiff adduced no convincing evidence to establish that the presence of this purported lien, which required payment of dues in an amount of $1,000 or less, diminished the value of the property in the eyes of third parties.
The court finds that the plaintiff has failed to prove the required elements of slander of title as to either of the filings that he claims support that claim.
Invocation of the Common Interest Ownership Act
In his closing argument and in his post-trial brief, the plaintiff discussed the provisions of the Connecticut Common Interest Ownership Act, Conn. Gen. Stat. § 33-1002 (4). None of the three counts of the operative complaint cites that statute. Practice Book Section 10-3(a) provides that "(w)hen any claim made in a complaint . . . is grounded on a statute, the statute shall be specifically identified by its number." Since the plaintiffs fourth amended complaint does not specifically identify reliance on § 33-1002 (4), the court will not consider any CT Page 15323 claim based on that statute.
Conclusion
For the foregoing reasons, the court enters judgment in favor of the plaintiff as to his claim, made in the first count of his complaint, that the Association has filed an unauthorized lien for unpaid Association dues, and the court hereby orders the defendant Association to cause a release of the lien to be filed on the land records of the Town of Stratford within twenty-five days. Judgment shall enter in favor of the defendants as to all of the plaintiffs other claims.
The parties shall bear their own fees. The plaintiff, having recovered on one of his claims, shall recover his court costs upon filing of a bill of costs with the clerk of the court pursuant to Conn. Gen. Stat. §52-257.
 _____________________________ Beverly J. Hodgson Date Judge of the Superior Court
CT Page 15323-a